IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 25, 2007

Charles R. Fulbruge III
Clerk

No. 06-30955

NORTH AMERICAN SPECIALTY INSURANCE COMPANY,
formerly known as Underwriters Insurance Company

Plaintiff-Appellant

V.

DEBIS FINANCIAL SERVICES INC

Defendant-Appellee

Appeals from the United States District Court
for the Eastern District of Louisiana
(2:04-CV-140)

Before DAVIS, WIENER, and PRADO, Circuit Judges.

WIENER, Circuit Judge.[*]

North American Specialty Insurance Company, formerly known as Underwriters Insurance Company ("Underwriters"), appeals the district court's dismissal of its action to recover monies paid to Debis Financial Services Inc. ("Debis") as an additional payee under a Hull Insurance Policy issued by Underwriters to Offshore Marine Contractors Inc. ("Offshore Marine"). We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

## I. FACTS & PROCEEDINGS

In 1994, Offshore Marine purchased a jack-up barge named the L/B ATLAS. Following the purchase, Debis loaned funds to Offshore Marine secured by a mortgage on the ATLAS. At all relevant times, the ATLAS was insured by Underwriters under a policy that contained both Hull & Machinery coverage ("Hull Policy") and Protection & Indemnity coverage ("P&I"). Debis, as mortgagee, was listed as a loss payee under the Hull Policy. In addition, Debis was named as an insured under a "Single Interest Mortgagee Form," which separately insured Debis for up to $2 million in the event that Offshore Marine should breach its warranty of the ATLAS's seaworthiness, an event that would prevent Offshore Marine (and thus Debis as its mortgagee) from recovering under the Hull Policy.

In August 2000, the ATLAS departed from Cameron, Louisiana, headed for the Matrix Oil & Gas production platform. The next day, the ATLAS sank in the Gulf of Mexico while attempting to jack-up at a Matrix facility. The vessel was a total constructive loss.

Offshore Marine reported the incident to Underwriters, which retained Andrew Wilson, esq., of Burke & Mayer, Attorneys, to represent itself and Offshore Marine in connection with property damage claims arising from the sinking of the ATLAS. Underwriters also retained the consulting firm of Steege Kingston & Associates to investigate the cause of the sinking. During its investigation, Steege Kingston became aware of allegations that Offshore Marine had ordered the captain of the ATLAS to commence the voyage in the face of knowledge that the vessel's jacking system was known to be malfunctioning. A known pre-voyage problem with the jacking system would breach the warranty of seaworthiness that was implied in the Hull Policy, which breach would void coverage. Although Offshore Marine denied any prior knowledge of a problem with the jacking system, it turned out that both Steege Kingston and Attorney

Wilson had reported allegations of the ATLAS's unseaworthiness to Underwriters.

Section 5.2 of Steege Kingston's second report stated:

> We have had no access to the crew since the casualty. Investigating officers from the USCG Marine Safety Office at Port Arthur, Texas have interviewed the crew as of August 30, 2000. We have queried the [United States Coast Guard] as to their preliminary findings, and while they are generally unwilling to divulge such findings, they have indicated that the crew reported they experienced a problem with the jacking gear of the port aft leg prior to departure to WC192A. Again, while we have not had access to the crew, we have queried [Offshore Marine which] indicates [it] was unaware of any problem with the port aft leg jacking system.

> [Offshore Marine] further states that when the crew experienced the initial problems at WC192A and called into the office, they were advised to cease any and all jacking evolutions, evacuate al personnel to the platform and await arrival of a relief liftboat to offload the deck cargo. [Offshore Marine] state that he thinks the resultant failure at the port aft leg occurred because the Master attempted to level the vessel prior to arrival of the relief vessel. Our investigation continues.

Mr. Wilson reported:

> we have recently received information from counsel for Matrix indicating that the master of the L/B ATLAS at the time of this incident has allegedly admitted to the "company man" onboard the liftboat that the jacking mechanism for the port stern leg was malfunctioning at the dock or at some prior location before the voyage which led to this loss. It is unclear when the admission was allegedly made. This is the same jacking mechanism which purportedly failed at the time of the incident and purportedly caused the loss, according to the information we have received to date.

> Counsel for Matrix also recently advised that his representatives have told him that the master of the L/B ATLAS had previously reported the problems with the jacking mechanism to [Offshore Marine's] representatives by cell phone repeatedly on several occasions some of which were just prior to the loss, but was told to proceed and to not report this information to Matrix. Finally, counsel for Matrix advised that, according to his information, this

3

account of the incident has been reported by the crewmembers to the United States Coast Guard's Marine Safety Office in Port Arthur.

Ultimately, Underwriters decided to pay the full amount of the Hull Policy, plus expenses for the salvage and removal of the wrecked liftboat. In so doing, Underwriters carved out $3,763,840.97 and paid it directly to Debis as vessel mortgagee and named loss payee under the Hull Policy.[1] Underwriters did not issue a reservation-of-rights letter in connection with payments to either Offshore Marine or Debis.

Thereafter, Offshore Marine initiated limitation of liability proceedings in the district court. Mr. Wilson again represented the interests of both Underwriters and Offshore Marine. Offshore Marine continued to deny any liability to third parties for losses or injuries arising out of the ATLAS's sinking.

Following the completion of discovery, Mr. Wilson informed Underwriters that the depositions and other discovery materials confirmed that Offshore Marine had indeed known about the faulty jacking system prior to ordering the captain of the ATLAS to sail from Cameron on the vessel's fateful voyage. Specifically, telephone records confirmed that several calls had been made to Offshore Marine or its principals from a payphone at the dock from which the vessel departed. In October 2002, Underwriters settled third-party personal injury and property damage claims arising out of the sinking of the ATLAS.

In January 2004, Underwriters filed the instant action against Offshore Marine and Debis, seeking a declaration that Underwriters was not liable for any payments made under the Hull Policy and is thus entitled to reimbursement of the payments made to those defendants, including costs and attorneys fees.

---

[1] Underwriters is seeking to recover only $1,763,840.97 of the $3,763,840.97 that it previously paid to Debis, in essence acknowledging that Debis would be entitled to the $2 million difference by virtue of the above mentioned Single Interest Mortgagee Form that would provide coverage to Debis in the event of a breach of warranty by Offshore Marine.

After completion of discovery, both Offshore Marine and Debis filed motions for summary judgment. Offshore Marine asserted that it was entitled to summary judgment because (1) Underwriters waived its policy defense by failing to reserve its rights or obtain a nonwaiver agreement while continuing to defend Offshore Marine in the limitation proceeding, (2) Underwriters was barred from bringing its claim because of the preclusive effect of the limitation proceeding, and (3) Underwriters's claim was barred by the doctrine of judicial estoppel. In its motion for summary judgment, Debis expressly adopted Offshore Marine's arguments regarding preclusion and judicial estoppel,[2] and additionally insisted that (1) Underwriters's claim was barred by the doctrine of laches, and (2) Underwriters had no cause of action under Louisiana's law governing recovery of a thing not owed.[3]

Following oral argument, the district court granted summary judgment in favor of both Offshore Marine and Debis, dismissing Underwriters's lawsuit. As to Offshore Marine, the court held that Underwriters had waived all coverage and policy defenses by failing to investigate allegations of unseaworthiness further or to issue a reservation-of-rights letter prior to making payment under the policy. As to Debis, the court addressed only its defenses of laches and no cause of action under the Louisiana Civil Code. Relying in part on Pilgrim Life Insurance Co. of America v. American Bank & Trust Co. of Opelousas,[4] the court held that Louisiana Civil Code article 2302 [current article 2299], which provides the quasi-contractual basis for a recovery claim like the one advanced by Underwriters against Debis, does not apply, so Debis is not required to

---

[2] Debis, in its reply memorandum to Underwriters's memorandum in opposition to summary judgment, also adopted Offshore Marine's waiver argument to the extent that the district court should determine Debis to be an additional insured under the Hull Policy.

[3] See La. Civ. Code. arts. 2299 et seq.

[4] 542 So.2d 804 (La. App. 3d Cir. 1989).

reimburse Underwriters. This, the court explained, is because Debis, as loss payee under the Hull Policy, was an innocent mortgagee which accepted the payment in good faith and was thus immune from a claim for recovery under the otherwise applicable provisions of the Civil Code.

Underwriters timely filed a notice of appeal. Shortly thereafter, however, Underwriters entered into a settlement agreement with Offshore Marine and dismissed it as a party to this appeal. Underwriters now seeks to recover solely from Debis, with which it has not settled.

Debis urges on appeal that collateral estoppel applies to that court's holding on the issue of waiver, precluding Underwriters's recovery from Debis. Underwriters counters that, because it settled with Offshore Marine before the judgment appealed from became final, the district court's ruling cannot support collateral estoppel vis a vis Debis. We have assumed arguendo, however, that (1) collateral estoppel does not apply, and (2) Underwriters would not be precluded from recovering from Debis under Louisiana Civil Code article 2299, and have proceeded to examine Underwriters's purported waiver of the Hull Policy defense of unseaworthiness. As we explain below, that examination has convinced us to adopt the district court's waiver analysis and hold that it was correct as to Offshore Marine and that it applies equally to Debis.[5]

## II. ANALYSIS

### A. Standard of Review

We review de novo a district court's grant of summary judgment.[6] Absent a specific and controlling federal rule, cases involving marine insurance

---

[5] Although the district court did not explicitly address the issue of waiver as between Underwriters and Debis, we may affirm the district court's decision on alternative grounds. McGruder v. Will, 204 F.3d 220, 222 (5th Cir. 2000).

[6] Am. Int'l Specialty Lines Ins. Co. v. Canal Indem. Co., 352 F.3d 254, 260 (5th Cir. 2003).

contracts are governed by state law.[7] As there are no specific and controlling federal admiralty rules involving breach of warranty in contracts of marine insurance, state law governs.[8] And, as Underwriters issued and delivered the insurance policy to Offshore Marine in Louisiana, we apply Louisiana law.[9]

B. Merits

Underwriters contends that it did not waive its right to assert the defense of unseaworthiness, because (1) it was unable to investigate the allegations of the ATLAS's unseaworthiness further, and (2) it did not have "actual facts" indicating noncoverage at the time it paid Offshore Marine. We find neither of these arguments persuasive.

"Waiver is generally understood to be the intentional relinquishment of a known existing legal right."[10] For waiver to occur, there must be an existing right, knowledge of its existence, and either an actual intention to relinquish that right or conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.[11] Under Louisiana law, "when an insurer, with knowledge of facts indicating noncoverage under the insurance policy, assumes or continues the insured's defense without obtaining a nonwaiver agreement to reserve its coverage defense, the insurer waives such

---

[7] Elevating Boats, Inc. v. Gulf Coast Marine, Inc., 766 F.2d 195, 198 (5th Cir. 1985).

[8] Wilburn Boat Co. v. Fireman's Fund Ins. Co., 348 U.S. 310, 320 (1955); Ins. Co. of N. Am. v. W. of England Shipowners Mut. Ins. Ass'n, 890 F. Supp. 1302, 1305-06 (E.D. La. 1995).

[9] Elevating Boats, Inc., 766 F.2d at 198.

[10] Peavey Co. v. M/V ANPA, 971 F.2d 1168, 1175 (5th Cir. 1992).

[11] Steptore v. Masco Constr. Co., 643 So.2d 1213, 1216 (La. 1994).

policy defense."[12]  Additionally, "notice of facts which would cause a reasonable person to inquire further imposes a duty of investigation upon the insurer."[13]

Underwriters was aware that the ATLAS's crewmembers and counsel for Matrix had reported that the ATLAS was unseaworthy at the time it left the port.  Despite having knowledge of these allegations, Underwriters paid Offshore Marine and Debis, and continued its joint representation without obtaining a nonwaiver agreement or issuing a reservation-of-rights letter.  Underwriters nevertheless persists in contending that waiver should not apply, urging that it could not fully investigate the allegations of unseaworthiness without prejudicing Offshore Marine in the personal injury litigation.  We cannot agree. Underwriters could have preserved its rights by issuing a reservation-of-rights letter.  By failing to do so, Underwriters waived its right to assert the defense of unseaworthiness.

Underwriters also contends that waiver does not apply because it was not aware of "actual facts" indicating noncoverage.   We again disagree. Underwriters cannot dispute that it received at least two separate reports indicating that Offshore Marine knew there was a problem with the vessel prior to its sailing for the Matrix facility.  Specifically, counsel for Matrix reported that "the master of the L/B ATLAS had previously reported problems to [Offshore Marine's] representatives by cell phone," and that, despite these calls, the ATLAS departed for the Matrix Oil Facility.  Had Underwriters reasonably investigated these allegations, it would surely have unearthed additional evidence indicating that Offshore Marine breached its warranty of seaworthiness.  To his credit, counsel for Underwriters acknowledged at oral argument that Underwriters was aware of the possibility that the loss might not

---

[12] Id.

[13] Id.

be covered, but weighed the economics of the competing positions and elected to disregard the allegations of unseaworthiness and pay the full amount due under the Hull Policy, hoping to avoid liability to potential third party claimants. Underwriters cannot seriously contend that it was "unaware of facts that indicate non-coverage."

We agree with the district court's waiver analysis and its conclusion that Underwriters waived its right to assert unseaworthiness as a defense to its liability under the Hull Policy. Even though the district court explicitly addressed the application of waiver as between Underwriters and Offshore Marine, we are convinced that waiver applies equally to Debis. As Offshore Marine's mortgagee, Debis recovered from Underwriters as loss payee under the Hull Policy by virtue of standing in the shoes of Offshore Marine; Underwriters did not pay Debis as an additional named insured under the Hull Policy or as a named insured under the Single Interest Mortgagee Form. As Debis recovered derivatively through Offshore Marine, it is entitled to no less rights and defenses against Underwriters's quasi-contractual claims to recovery than those to which Offshore Marine was entitled to assert. Underwriters's waiver of the defense of unseaworthiness bars its recovery claim against Debis to no less extent than that defense barred its recovery claim against Offshore Marine.[14]

## III. CONCLUSION

We adopt the district court's waiver analysis and hold that Underwriters waived the defense of unseaworthiness. Debis recovered under the loss payee provision of the Hull Policy as Offshore Marine's mortgagee, so Underwriters's waiver of the defense of unseaworthiness bars recoupment of the monies paid to Debis. Accordingly, the district court did not err in

---

[14] Given our holding that Underwriters cannot recover from Debis because it waived the defense of unseaworthiness, we need not and therefore do not reach the issues of collateral estoppel or recovery under Louisiana Civil Code article 2299.

granting Debis's motion for summary judgment, dismissing Underwriters's claim of recovery against Debis.

AFFIRMED.