# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

October 10, 2016

Lyle W. Cayce
Clerk

No. 15-10943

————

SGIC STRATEGIC GLOBAL INVESTMENT CAPITAL, INCORPORATED;
GRIL GERMAN RESTAURANT INVESTMENT AND LENDING,
INCORPORATED; CHRISTIAN GROENKE,

> Plaintiffs - Appellants

v.

BURGER KING EUROPE GMBH,

> Defendant - Appellee

————

Appeal from the United States District Court
for the Northern District of Texas

————

Before STEWART, Chief Judge, and PRADO and SOUTHWICK, Circuit
Judges.

CARL E. STEWART, Chief Judge:

This case arises from a series of disputes over Burger King franchises located in Germany. The district court granted Defendant-Appellee's motion to dismiss Plaintiffs-Appellants' claims on grounds of forum non conveniens and denied as moot their motion for leave to file an amended complaint. For the following reasons, we AFFIRM the districts court's judgment dismissing Plaintiffs-Appellants' claims against Defendant-Appellee on grounds of forum non conveniens. We VACATE the district court's judgment denying Plaintiffs-Appellants' motion for leave to amend and REMAND for further proceedings.

No. 15-10943

## I. FACTUAL AND PROCEDURAL BACKGROUND[1]

Plaintiffs-Appellants Christian Groenke ("Groenke"), SGIC Strategic Global Investment Capital, Inc. ("SGIC"), and GRIL German Restaurant Investment and Lending, Inc. ("GRIL") owned and operated numerous Burger King restaurants in Germany,[2] initially through their interest in a German company, HEGO.[3]  HEGO later became a wholly owned subsidiary of another German company, SAVE.[4]  These Burger King restaurants all operated under franchise agreements entered into with Defendant-Appellee BKE.[5]  Groenke also signed a separate personal guarantee (the "Personal Guarantee") with BKE, wherein he assumed responsibility for the payment of certain franchise fees for the Burger King restaurants operated by Plaintiffs-Appellants.

BKE is a Swiss corporation and the franchisor of Burger King restaurants in Germany.  The HEGO Burger King restaurants all had individual franchise agreements with BKE, which required that, among other things, the franchisees pay franchise fees.  These franchise agreements each contained a materially identical forum selection clause, which states that (1) Munich, Germany is the exclusive venue for any disputes arising out of the contract, and (2) the contract is governed by German law.[6]

---

[1] Throughout this opinion, the full names of foreign businesses and corporations appear in the footnotes, rather than in the body of the text.

[2] Groenke is the sole shareholder of SGIC, which in turn is the sole shareholder of GRIL.  Groenke is a resident of Texas; SGIC and GRIL are both Delaware corporations with their principal places of business in Texas.

[3] HEGO System-Gastronomie GmbH & Co. KG and its subsidiaries, herein ("HEGO").

[4] SAVE Vermogensverwoltungs GmbH & Co., Holding KG, herein ("SAVE").

[5] Burger King Europe GmbH, herein ("BKE").

[6] The text of the forum selection clause states:  "The exclusive venue for any disputes arising out of this Agreement, its application or its termination shall be Munich. . . .  This agreement and its interpretation are governed by the laws of the Federal Republic of Germany."

2

No. 15-10943

In Germany, BKB[7]—referred to as a Burger King "support organization" —owned and operated a number of Burger King restaurants through its subsidiaries.  Although these restaurants had been operating at a loss, SAVE purchased shares in BKB's restaurants.  As part of that deal, Groenke negotiated a five-year development agreement for HEGO that included the opportunity to purchase ninety-one additional franchises and executed the Personal Guarantee to assume the obligations in a number of HEGO's franchise agreements.  Although the Personal Guarantee referred to the franchise agreements, it did not contain a forum selection clause.

After the purchase of BKB's shares, SAVE became SAGRO.[8]  A series of mergers and restructurings resulted in ARH[9] becoming the successor in interest to SAGRO.  GRIL is the sole shareholder of ARH.

The present dispute began when Groenke and SGIC attempted to sell their interest in GRIL.  Groenke and SGIC claim that they informed BKE of their intention to sell GRIL and that BKE initially helped identify potential buyers.  In December of 2013, SGIC entered into a term sheet with potential buyers while the negotiations to sell GRIL progressed.  Then, on April 23, 2014, SGIC entered into a share purchase agreement with SHOKOIP Limited.

Around the same time, in March and April of 2014, BKE sent correspondence to GRIL and the prospective buyers that purportedly interfered with the impending deal.  BKE allegedly stated, in essence, that (1) the relevant franchise agreements required BKE's approval for the sale of GRIL, (2) BKE opposed the sale, and (3) BKE may unilaterally terminate the franchise agreements if the share purchase agreement proceeded.  When the

---

[7] Burger King Beteiligungs GmbH, herein ("BKB").
[8] BK HEGRO-SAGRO Holding GmbH & Co. KG, herein ("SAGRO").
[9] American Restaurant Holding, LP, herein ("ARH").

potential buyers pulled out of the deal, Groenke, SGIC, and GRIL filed the instant lawsuit against BKE, claiming tortious interference and seeking a declaratory judgment regarding their rights under the relevant franchise agreements (the "Franchise Agreement Litigation"). The Franchise Agreement Litigation began on September 12, 2014.

On April 17, 2014—five months prior to the start of the Franchise Agreement Litigation—BKE filed a separate suit against Groenke in the Northern District of Texas to recover franchise fees that Groenke allegedly owed BKE under the Personal Guarantee (the "Personal Guarantee Litigation"). Although the Personal Guarantee Litigation's sole cause of action was for a breach of the Personal Guarantee, it referenced the franchise agreements to determine the parties' rights and obligations. The restaurants at issue in the Franchise Agreement Litigation do not overlap with the restaurants at issue in the Personal Guarantee Litigation.

BKE subsequently moved to dismiss the Franchise Agreement Litigation based on lack of personal jurisdiction or, in the alternative, forum non conveniens. Plaintiffs-Appellants opposed the motion to dismiss and also filed a separate motion for leave to file an amended complaint. The proposed amended complaint sought to add HEGO and Burger King Corporation ("BKC")[10] as parties and asserted additional claims for business disparagement and tortious interference.

The district court dismissed the suit on grounds of forum non conveniens based on the forum selection clause in the relevant franchise agreements. In doing so, the court found that BKE did not waive its right to enforce the forum selection clause by filing suit against Groenke in the Personal Guarantee

---

[10] BKC is a Florida corporation with its principal place of business in Miami, Florida.

Litigation.    The district court then entered an order, without reasons, dismissing as moot Plaintiffs-Appellants' motion for leave to amend.  Plaintiffs-Appellants filed this appeal.[11]

## II. DISCUSSION

Plaintiffs-Appellants challenge the district court's dismissal of their claims against BKE as well as the district court's denial of their motion for leave to amend.

*A. Forum Non Conveniens*

Plaintiffs-Appellants first argue that the district court erred in dismissing their claims on grounds of forum non conveniens.  They assert that BKE waived the forum selection clause in the franchise agreements by filing the Personal Guarantee Litigation in Texas.

This court reviews the waiver of a contractual right de novo and the factual findings underlying the district court's waiver determination for clear error.  *See Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999).  Similarly, "[w]e review the district court's interpretation of the [forum selection clause] and its assessment of that clause's enforceability *de novo*." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016).

As this court has noted, "[t]here is a lack of authority determining whether federal or state law principles control the standard for determining a party's waiver of rights under a forum selection clause."  *Wellogix, Inc. v. SAP Am., Inc.,* Nos. 15-20184, 15-20187, 2016 WL 2772280, at *2 (5th Cir. May 12,

---

[11] While this appeal was pending, a district court entered judgment in favor of BKE in the Personal Guarantee Litigation.  *Burger King Eur. Gmbh v. Groenke*, No. 3:14-cv-1417, 2015 WL 6751121 (N.D. Tex. Nov. 5, 2015).

2016).[12]  We have previously "held that federal law governs the *enforceability* of a forum selection clause, but the forum state's choice of law rules control what law governs the *interpretation* of the clause." *Id.* (citing *Weber*, 811 F.3d at 770).[13]

One line of authority, previously acknowledged by this court, applies a traditional waiver standard to forum selection clauses. *See GP Plastics Corp. v. Interboro Packaging Corp.*, 108 F. App'x 832, 835–36 (5th Cir. 2004); *Wellogix*, 2016 WL 2772280, at *3 (citing *Haber v. Biomet, Inc.*, 578 F.3d 553, 558 (7th Cir. 2009)).  These cases hold that waiver of a forum selection clause requires: "(1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right."  *GP Plastics*, 108 F. App'x at 836 (citation omitted).  Waiver can also occur if a party engages in "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished."  *N. Am. Specialty Ins. Co. v. Debis Fin. Servs., Inc.*, 513 F.3d 466, 470 (5th Cir. 2007).

This court has also recognized "[a] second line of authority, articulating both federal and Texas law, [which] would apply essentially the test used by federal courts to assess waiver of arbitration clauses, which are a species of forum selection clause."  *Wellogix*, 2016 WL 2772280, at *3.  Under this test, "the party to the [forum selection] clause waives its right if it '(1) substantially invokes the judicial process [in derogation of the forum selection clause] and (2) thereby causes detriment or prejudice to the other party.'"  *Id.* at *3 (quoting

---

[12] Although German law could potentially govern the interpretation of the forum selection clauses at issue based on the choice of law provisions in the franchise agreements, neither party advances that argument. Thus, we do not address it here.

[13] This circuit has not yet determined whether waiver is a matter of enforceability or interpretation, but because we conclude that BKE did not waive the forum selection clause under either standard, we do not reach this issue here.

No. 15-10943

*Al Rushaid v. Nat'l Oilwell Varco, Inc.*, 757 F.3d 416, 421 (5th Cir. 2014));
*accord In re ADM Inv'r Servs.*, 304 S.W.3d 371, 374 (Tex. 2010).

Plaintiffs-Appellants contend that by filing suit in the Personal Guarantee Litigation in Texas, BKE waived its right to enforce the forum selection clause in the Franchise Agreement Litigation.[14] We are not persuaded by this argument. Both parties concede that the franchises at issue in the Personal Guarantee Litigation are different franchises than those at issue in the Franchise Agreement Litigation. Although the franchise agreements contain materially identical language, the Franchise Agreement Litigation involves a set of contracts wholly separate from those involved the Personal Guarantee Litigation. Even assuming that BKE's filing of the Personal Guarantee Litigation resulted in waiver of the forum selection clauses in those agreements, that waiver would not extend to the forum selection clauses in the specific agreements at issue in the Franchise Agreement Litigation. Therefore, we cannot conclude that BKE's filing of the Personal Guarantee Litigation resulted in waiver of its right to enforce the forum selection clause in the Franchise Agreement Litigation. *See N. Am. Specialty,* 513 F.3d at 470 (finding waiver can occur when a party engages in

---

[14] In support of their argument, Plaintiffs-Appellants cite to a district court case out of Virginia, which holds that a forum selection clause is waived when a party files suit in a forum inconsistent with a contract's forum selection clause. *Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 849–51 (E.D. Va. 2014). Plaintiffs-Appellants' reliance on *Kettler* is misplaced. In *Kettler*, both parties brought claims under the same contract. *Id.* at 843–44. Not so here. BKE filed the earlier lawsuit for breach of the Personal Guarantee. This lawsuit, however, involves the franchise agreements themselves. *See Bancroft Life & Cas. ICC, Ltd. v. Davnic Ventures, LP*, No. 12-2015, 2013 WL 1222112, *3 (S.D. Tex. Mar. 25, 2013) (finding that a forum selection clause in an insurance policy did not extend to separate promissory notes executed between the parties).

No. 15-10943

"conduct so inconsistent with the intent to enforce [its] right[s]" that it raises a reasonable belief that the party relinquished its rights). [15]

We additionally note that Plaintiffs-Appellants have not shown waiver under the second potentially applicable test articulated in *Wellogix* and *Al Rushaid* because they did not allege that BKE's filing of the Personal Guarantee Litigation resulted in their "detriment or prejudice." *Wellogix*, 2016 WL 2772280, at \*3; *Al Rushaid*, 757 F.3d at 421.

Accordingly, we uphold the district court's judgment dismissing Plaintiffs-Appellants' claims against BKE on grounds of forum non conveniens.

*B. Leave to Amend*

Next, we turn to Plaintiffs-Appellants' second argument that the district court erred in denying as moot their motion for leave to amend. Plaintiffs-Appellants argue that because the motion for leave to amend was the first time they sought amendment of the complaint and the amendment was filed within the scheduling order deadline, the district court abused its discretion in denying their motion as moot without providing reasons for doing so. We agree.

We "review[ ] a district court's denial of leave to amend a complaint for abuse of discretion." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459,

---

[15] Plaintiffs-Appellants' argument that the forum selection clause should be read broadly to include the Personal Guarantee because it encompasses all disputes "arising out of this [franchise] [a]greement, its application, or its termination" is also unconvincing. The two out-of-circuit cases relied on by Plaintiffs-Appellants do not support their contention. *Simula*, a Ninth Circuit arbitration case, distinguishes contracts with the phrase "arising in connection with" as having a broader reach than those contracts with the more limiting "arising out of" language present in BKE's franchise agreements. *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 720 (9th Cir. 1999). *Electro-Mechanical* found waiver of a forum selection clause when two parties sued under a single sales contract. *Electro-Mechanical Corp. v. Riter Eng'g Co.*, No. 2:10-CV-975, 2011 WL 2118704, at \*4 (D. Utah May 25, 2011). Nothing in *Electro-Mechanical*, however, suggests that the forum selection clause in the sales contract would extend to claims under a separate contract, such as the Personal Guarantee here.

1464 (5th Cir. 1995). Federal Rule of Civil Procedure 15(a) states that the district "court should freely give leave [to amend] when justice so requires." "[T]he language of this rule 'evinces a bias in favor of granting leave to amend,'" and "[a] district court must possess a 'substantial reason' to deny a request." *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (citation omitted). A district court should "examine[ ] five considerations to determine whether to grant a party leave to amend a complaint: 1) undue delay, 2) bad faith or dilatory motive, 3) repeated failure to cure deficiencies by previous amendments, 4) undue prejudice to the opposing party, and 5) futility of the amendment." *Id.* (citations omitted). Moreover, "[g]iven the policy of liberality behind Rule 15(a), it is apparent that when a motion to amend is not even considered, much less not granted, an abuse of discretion has occurred." *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 245–46 (5th Cir. 1997) (quoting *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987)).

Notwithstanding our strong preference for explicit reasoning for denial of a motion to amend, "when the justification for the denial is 'readily apparent,' a failure to explain 'is unfortunate but not fatal to affirmance if the record reflects ample and obvious grounds for denying leave to amend.'" *Marucci Sports, LLC v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (5th Cir. 2014) (quoting *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 426 (5th Cir. 2004)).

As noted, the district court stated—without providing reasons—that the motion for leave to amend was moot. Although "mootness is a valid basis for denying leave to amend," it is not clear on the record before us that all of Plaintiffs-Appellants' additional claims would have been moot. *Carroll v. Fort*

9

No. 15-10943

*James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006).[16]  Moreover, there is no explanation from the district court concerning other factors that could warrant the district court's denial of the motion.  Plaintiffs-Appellants filed the motion within the scheduling order deadline.  "Thus, on its face, the motion was timely and evidenced no prejudice to the other parties or potential to delay the proceeding." *Halbert v. City of Sherman*, 33 F.3d 526, 529 (5th Cir. 1994).[17]

Consequently, we hold that the district court abused its discretion when it denied as moot Plaintiffs-Appellants' motion for leave to amend without providing reasons for doing so, when the record also lacked "ample and obvious grounds" supporting its denial of the motion.  *Marucci*, 751 F.3d at 378.

### III. CONCLUSION

We AFFIRM the district court's judgment dismissing Plaintiffs-Appellants' claims against BKE on grounds of forum non conveniens.  We VACATE the district court's order denying Plaintiffs-Appellants' motion for leave to amend and REMAND for further proceedings consistent with this opinion.

---

[16] The amended complaint sought to add additional parties and claims that were not fully addressed in the court's analysis of forum non conveniens and direct benefits estoppel. To be clear, nothing in this opinion should be construed as reaching the viability of such claims.

[17] We recognize that this court has upheld the denial of a motion for leave to amend, when the motion was filed on the eve of the court's disposition of that case on summary judgement. *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 139–40 (5th Cir. 1993).  In *Wimm*, the plaintiffs also filed the motion within the court's scheduling order deadline.  *Id.* at 138. However, the court in *Wimm* made express findings of bad faith and dilatory motive.  *Id.* at 142.  Although bad faith or dilatory motive may be present in the instant case to warrant denial of the motion for leave to amend, it is not "ample and obvious" on the record before us. *Marucci*, 751 F.3d at 378.