## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50872

United States Court of Appeals
Fifth Circuit

**FILED**

May 31, 2018

Lyle W. Cayce
Clerk

LAURA HAMPTON,

> Plaintiff – Appellant,

v.

EQUITY TRUST COMPANY,

> Defendant – Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:12-CV-250

Before REAVLEY, ELROD, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Laura Hampton sued Equity Trust Company in federal court for allegedly aiding and abetting a Ponzi scheme involving real-estate loan participation agreements. After the federal court dismissed Hampton's claims based on a forum-selection clause designating Ohio as the proper venue, Hampton sued Equity Trust in both Ohio and Texas state courts. After two

---

* Pursuant to Fifth Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Fifth Circuit Rule 47.5.4.

No. 16-50872

years of litigating against Hampton on the merits in Texas, and with an impending trial in Texas state court, Equity Trust moved in the federal court to enjoin the Texas proceedings. We VACATE the federal court's injunction.

## I.

This case arises out of an alleged Ponzi scheme operated in the Austin area involving real-estate loan participation agreements. Laura Hampton and other investors originally sued Robert Langguth, Claudia Lee Langguth, and Equity Trust Company in federal court, alleging violations of the Texas Securities Act. Equity Trust is a passive custodian for self-directed individual retirement accounts (IRAs). Hampton opened a self-directed IRA with Equity Trust and signed an IRA application, thus agreeing to be bound by the terms and conditions of a Custodial Account Agreement. Section 8.15 of that Agreement states that "[a]ny suit filed against [the] custodian arising out of or in connection with this agreement shall only be instituted in the county courts of Lorain County, Ohio . . . and you agree to submit to such jurisdiction . . . ." The Agreement also contains a choice-of-law provision stating that Ohio law would govern the interpretation of the Agreement.

Equity Trust moved to dismiss the claims of the account-holding plaintiffs for improper venue under Federal Rule of Civil Procedure 12(b)(3) based on the forum-selection clause in the agreements that the accountholders had executed with Equity Trust. (Eight of the plaintiffs in the federal lawsuit had not opened accounts with Equity Trust and did not have formal relationships with the company; the federal court termed these plaintiffs the "non-accountholders.") In January 2013, the federal court dismissed Hampton's and the other accountholders' claims "without prejudice to being

2

No. 16-50872

refiled in Ohio should accountholders believe that appropriate."[1] Hampton did not appeal the federal court's dismissal order.

The next month, Hampton and the other accountholders from the federal case sued Equity Trust, the Langguths, and another entity in Ohio state court, alleging violations of the Texas Securities Act, as well as several mostly fraud-related common law claims. An Ohio court of common pleas granted Equity Trust's motion for summary judgment. An Ohio appellate court reversed the grant of summary judgment and remanded for further proceedings in the court of common pleas.[2]

A day after Hampton sued Equity Trust in Ohio, the eight non-accountholders (those who had not executed agreements with Equity Trust) filed a lawsuit in Travis County, Texas, against Equity Trust, the Langguths, and another entity, alleging violations of the Texas Securities Act and mostly fraud-related common law claims nearly identical to the claims filed in Ohio. One of these eight plaintiffs was the Hampton Trust, for which Laura Hampton served as trustee. Several months later, in July 2013, the Texas plaintiffs filed a first amended petition in which Hampton joined the lawsuit in her individual capacity. On its first page, the amended petition stated: "Laura Grace Hampton . . . is proceeding in her individual capacity as well as her capacity as Executrix . . . ."

In April 2015, Equity Trust filed supplemental special exceptions to the Texas plaintiffs' first amended petition contending that, to the extent Hampton was asserting claims in her individual capacity, her claims were proper only in Ohio. However, Equity Trust appears not to have pursued a hearing on its

---

[1] The non-accountholders moved for dismissal of their claims without prejudice, which the federal court granted.

[2] At oral argument in this appeal, counsel for Equity Trust stated that while it is not part of the record, it was her understanding that Hampton had voluntarily dismissed her claims in Ohio without prejudice, with the right to refile those claims by February 2018.

special exceptions, and apparently no hearing was ever set.  A month later, Equity Trust filed an amended answer to the Texas plaintiffs' second amended petition and original crossclaim, asserting as a one-sentence affirmative defense that the forum-selection clause in Hampton's contract with Equity Trust barred Hampton's claims in Texas state court.  In June 2015, Equity Trust filed amended responses to requests for disclosure in which it asserted the same.  At no point did Equity Trust file a motion to dismiss or a motion to transfer venue in Texas state court.  Discovery—which included the deposition of Laura Hampton—was complete by mid-July 2015.

At the close of discovery, Equity Trust filed a series of motions for summary judgment against Hampton and the other plaintiffs in Texas state court.  Equity Trust filed traditional motions for partial summary judgment seeking judgment on the merits: (1) on plaintiffs' aiding and abetting breach of fiduciary duty and fraud claims; (2) on plaintiffs' claims under the Ohio Corrupt Practices Act; (3) on the statutes of limitations; and (4) on *res judicata*.[3]  Even in its summary-judgment motion based on *res judicata*, Equity Trust did not specifically discuss the forum-selection clause in Hampton's contract nor argue that the Texas state court should defer to the federal court.  Rather, Equity Trust simply contended that Hampton's claims should be dismissed because they were barred by the final judgment of an Ohio court of common pleas, which granted summary judgment to Equity Trust on Hampton's claims.  As noted above, however, an Ohio appellate court

---

[3] In its summary-judgment motions on the aiding and abetting breach of fiduciary duty and fraud claims and on the statutes of limitations, Equity Trust mentioned in footnotes that it was also filing a motion for partial summary judgment against Hampton based on *res judicata*.  The footnotes state that, as a consequence, the other summary-judgment motions, as they apply to Hampton, may be mooted by the state court's ruling on the *res judicata* motion.  A similar footnote appears in the summary-judgment motion on the Ohio Corrupt Practices Act claims.

eventually reversed the grant of summary judgment and remanded for further proceedings in the court of common pleas.

The Texas state court conducted a hearing on Equity Trust's summary-judgment motions. Following mediation, the parties informed the state court that only three plaintiffs still required rulings, including Laura Hampton in her individual capacity and in her capacity as an executrix. The Texas state court then denied all of Equity Trust's summary-judgment motions except its motion on *res judicata*, regarding which the state court stayed all further action pending a final ruling from the Ohio appellate court. After the Ohio appellate court reversed the grant of summary judgment to Equity Trust, Hampton filed a motion to lift the stay in the Texas case. In the interim, Equity Trust resolved the claims of all plaintiffs in the Texas case except Hampton's individual claims.[4] The Texas state court granted Hampton's motion to lift the stay, denied Equity Trust's *res judicata* summary-judgment motion, and set Hampton's case for trial.

After losing on summary judgment and with the case set for trial, Equity Trust immediately applied for a permanent injunction in the same federal court that had issued the 2013 order. Equity Trust argued that it met the requirements for succeeding on the merits under the Anti-Injunction Act's relitigation exception and that the federal court had authority to issue an injunction. In response, Hampton argued that she was not seeking state-court relief inconsistent with the 2013 order and that Supreme Court precedent did not permit applying the relitigation exception in this case. Hampton also contended that even if the relitigation exception did apply, Equity Trust

[4] Hampton's motion to lift the stay in the Texas case states that the case was originally set for trial in October 2015 but that it "did not proceed to trial because the remaining plaintiffs' claims against Equity Trust were dismissed by agreement. As such, the only claims that remain pending in this case against Equity Trust are those asserted by Laura Hampton. This case is ready for a new trial setting, and is ready for trial."

5

No. 16-50872

waived application of the forum-selection clause. Following a bench trial, the federal court granted Equity Trust's request for a permanent injunction, barring Hampton from pursuing any claims in conflict with the 2013 order against Equity Trust in any Texas state court.[5] This timely appeal followed.[6]

## II.

We have appellate jurisdiction over the federal court's final judgment permanently enjoining the Texas litigation. 28 U.S.C. § 1291; *Duffy & McGovern Accommodation Servs. v. QCI Marine Offshore, Inc.*, 448 F.3d 825, 827 (5th Cir. 2006).

We review the federal court's grant of injunctive relief under an abuse-of-discretion standard. *Abraham v. Alpha Chi Omega*, 708 F.3d 614, 620 (5th Cir. 2013). A federal court abuses its discretion if it: "(1) relies on clearly erroneous factual findings when deciding to grant or deny the permanent injunction, (2) relies on erroneous conclusions of law when deciding to grant or deny the permanent injunction, or (3) misapplies the factual or legal conclusions when fashioning injunctive relief." *Dresser-Rand Co. v. Virtual Automation Inc.*, 361 F.3d 831, 847 (5th Cir. 2004) (quoting *Peaches Entm't Corp. v. Entm't Repertoire Assocs., Inc.*, 62 F.3d 690, 693 (5th Cir. 1995)). We review the waiver of a contractual right *de novo* and any findings of fact underlying the waiver determination for clear error. *SGIC Strategic Glob. Inv.*

---

[5] The federal court order states: "Plaintiff Laura Hampton and those persons in active concert or participation with her, are immediately and permanently enjoined and restrained, directly or indirectly, whether for themselves or on behalf of Hampton, and regardless of capacity, from pursuing in violation of or in contrast with this court's January 31, 2013 Order any claims or causes of action by Hampton against Equity Trust Company in Texas courts, whether in Cause No. D-1-GN-13-000747 in the 353rd District Court of Travis County, Texas, or in any other Texas court."

[6] A little over two months after the notice of appeal was filed, the appeal was dismissed under Federal Rule of Appellate Procedure 42(b) as to all appellants and appellees except Appellant Laura Hampton and Appellee Equity Trust, pursuant to Hampton's unopposed motion.

No. 16-50872

*Capital, Inc. v. Burger King Europe GmbH*, 839 F.3d 422, 426 (5th Cir. 2016); *see also Aptim Corp. v. McCall*, 888 F.3d 129, 140 (5th Cir. 2018).

### III.

### A.

Hampton raises two main issues on appeal. Hampton first argues that the federal court erred in enjoining the state-court proceedings under the relitigation exception to the Anti-Injunction Act.[7]  Specifically, Hampton contends that the federal court erred in exercising jurisdiction under the Anti-Injunction Act, and that even if the court had jurisdiction, it erred in applying a claim-preclusion analysis rather than an issue-preclusion analysis. Hampton also argues that, even if the federal court properly exercised jurisdiction under the Anti-Injunction Act, Equity Trust waived the application of the forum-selection clause by substantial litigation on the merits for over two years in Texas state court. We do not reach the first issue, because even assuming *arguendo* that the federal court did not err in interpreting the Anti-Injunction Act to permit an injunction here, waiver of the forum-selection clause is unequivocally established on this record.

### B.

Hampton argues that Equity Trust waived the application of the forum-selection clause. According to Hampton, Equity Trust is attempting to take a second bite at the apple after litigating and conducting discovery for over two years in state court only to return to federal court for an injunction on the eve of trial after its summary-judgment motions were denied.

---

[7] The Anti-Injunction Act states that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283.

7

In the arbitration context, we have held that "[w]aiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)).  However, in the context of forum-selection clauses, we have noted that "[t]here is a lack of authority determining whether federal or state law principles control the standard for determining a party's waiver of rights under a forum selection clause." *Wellogix, Inc. v. SAP Am., Inc.*, 648 F. App'x 398, 401 (5th Cir. 2016) (unpublished).

While we have not yet decided—nor have the parties here asked us to decide—whether the waiver determination for forum-selection clauses is governed by federal or state law, we have articulated waiver determinations in this context in two different ways.  *See SGIC Strategic*, 839 F.3d at 426–27, 426 n.13 (discussing two waiver approaches and holding that appellants failed to show waiver under either approach); *Wellogix*, 648 F. App'x at 401–02 (same).  The first approach is a traditional inquiry that asks whether a party "intentionally or voluntarily relinquished its rights under the clause." *Wellogix*, 648 F. App'x at 401.  The cases articulating this approach hold that waiver of a forum-selection clause requires: "(1) an existing right, benefit, or advantage; (2) actual or constructive knowledge of its existence; and (3) actual intent to relinquish that right." *SGIC Strategic*, 839 F.3d at 426 (quoting *GP Plastics Corp. v. Interboro Packaging Corp.*, 108 F. App'x 832, 836 (5th Cir. 2004)).  "Waiver can also occur if a party engages in 'conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished.'" *Id.* (quoting *N. Am. Specialty Ins. Co. v. Debis Fin. Servs.*, 513 F.3d 466, 470 (5th Cir. 2007)).  Under the second approach, "the party to the forum selection clause waives its right if it (1) substantially invokes the judicial process in derogation of the forum selection clause and (2) thereby

causes detriment or prejudice to the other party." *Id.* at 426–27 (quoting *Wellogix*, 648 F. App'x at 402); *accord In re ADM Inv'r Servs., Inc.*, 304 S.W.3d 371, 374 (Tex. 2010).

"To invoke the judicial process, a 'party must, at the very least, engage in some overt act in court that evinces a desire to resolve the . . . dispute through litigation . . . .'" *Mirant*, 613 F.3d at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329 (5th Cir. 1999)). Litigation on the merits can substantially invoke the judicial process. *See id.* ("By seeking to prove its own allegations to the district court, [appellant] invoked the judicial process to a greater degree than it would have by filing a mere 'perfunctory motion to dismiss.'" (quoting *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 661 (5th Cir. 1995))). "In addition to invocation of the judicial process, the party opposing arbitration must demonstrate prejudice before we will find a waiver of the right to arbitrate." *Id.* at 591 (quoting *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009)). "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Id.* (quoting *Nicholas*, 565 F.3d at 910). An untimely assertion of the right bears on the question of prejudice. *Nicholas*, 565 F.3d at 910; *see also Mirant*, 613 F.3d at 591 (holding that appellant failed to make a timely demand for arbitration where it "waited eighteen months before moving to compel arbitration while it attempted to obtain a dismissal with prejudice from the district court"). In *Mirant*, we determined that "listing the right to compel arbitration as an affirmative defense in [appellant's] answer and reserving that right in its motions to dismiss" was insufficient to show a timely assertion of a right to arbitrate where appellant also delayed in asserting that right. 613 F.3d at 591.

Both waiver approaches are easily satisfied here. Equity Trust substantially invoked the judicial process to Hampton's detriment. Equity Trust was on notice as of July 2013 that Hampton was pursuing claims in her

individual capacity in Texas state court. Equity Trust delayed almost two years before filing special exceptions arguing that Hampton's claims were proper only in Ohio based on a forum-selection clause. Equity Trust then failed to pursue a hearing on its special exceptions. *See Brooks v. Hous. Auth.*, 926 S.W.2d 316, 322 (Tex. App.—El Paso 1996, no writ) ("Appellant had the burden to obtain a timely hearing to present her special exceptions to the trial court and obtain a ruling."). In addition, Equity Trust never filed a motion to dismiss in Texas state court. *Cf. In re AIU Ins. Co.*, 148 S.W.3d 109, 120–21 (Tex. 2004) (determining that defendant did not waive reliance on a forum-selection clause where defendant filed a motion to dismiss based on the forum-selection clause five months after plaintiff filed the lawsuit); *In re ADM*, 304 S.W.3d at 374 ("Simultaneously filing an answer and motion to transfer venue with a motion to dismiss falls short of substantially invoking the judicial process to [plaintiff's] detriment or prejudice."). Nor did Equity Trust file a motion to transfer venue. *Cf.* 5 Dorsaneo, Texas Litigation Guide § 61.04 (LEXIS 2018) ("In general, a defendant waives the right to object to venue if the defendant fails to properly object before or concurrently with the defendant's first responsive pleading other than a special appearance motion.").

We need not decide whether these litigation choices constitute sufficient invocation of the judicial process for the purposes of waiver. This is because after ignoring readily available mechanisms for invoking the forum-selection clause, deposing Hampton, completing discovery, and delaying two years, Equity Trust filed a summary-judgment motion based on *res judicata* that was an "overt act" for judgment on the merits, "evinc[ing] a desire to resolve the . . . dispute through litigation." *See Mirant*, 613 F.3d at 589 (quoting *Subway Equip.*, 169 F.3d at 329). In this summary-judgment motion, Equity Trust did not specifically discuss the forum-selection clause, nor did it argue that the Texas state court should defer to the federal court or send the case to

Ohio. Rather, Equity Trust simply contended that summary judgment should be granted in favor of Equity Trust and against Hampton.[8] Accordingly, Equity Trust substantially invoked the judicial process.

This substantial invocation of the judicial process caused detriment to Hampton. "A party cannot keep its right to demand arbitration in reserve indefinitely while it pursues a decision on the merits before the district court." *Id.* at 591. Nor could Equity Trust indefinitely reserve the right to seek enforcement of a forum-selection clause while it sought a merits determination in state court. Incredibly, Equity Trust contends that it "vigorously asserted the [2013 order] and the forum-selection clause at every opportunity." A review of the record belies this assertion. In addition to the significant delay, allowing Equity Trust to invoke the forum-selection clause at the eleventh hour—after Hampton has survived summary judgment and is ready for a jury trial—would obviously damage Hampton's legal position. *See id.* at 592 (an eighteen-month delay "wasted judicial resources and disadvantaged [appellee]"). Thus, Equity Trust has substantially invoked the judicial process to Hampton's detriment. Moreover, Equity Trust has intentionally and voluntarily relinquished its rights under the forum-selection clause through "conduct so inconsistent with the intent to enforce the right as to induce a reasonable belief that it has been relinquished." *SGIC Strategic*, 839 F.3d at 426 (quoting *N. Am. Specialty*, 513 F.3d at 470).[9]

---

[8] Moreover, Equity Trust's contention that the grant of summary judgment from an Ohio court of common pleas barred Hampton's claims under *res judicata* was undermined when the Ohio appellate court reversed the trial court's judgment.

[9] *See also Martin v. Yasuda*, 829 F.3d 1118, 1125, 1128 (9th Cir. 2016) (citing *Mirant* to support the proposition that "[a] statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver" and declining to allow defendants "to gain an unfair advantage by virtue of their litigation conduct").

No. 16-50872

## IV.

Accordingly, we VACATE the federal court's permanent injunction enjoining the Texas state-court proceedings.