IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-31236
_____


SUBWAY EQUIPMENT LEASING CORPORATION;
SUBWAY RESTAURANTS, INC.,

                                    Plaintiffs-Appellants,

                    versus

BONNIE FORTE, wife of/and; CHARLES N.
FORTE; SELENA RANKINS, wife of/and;
FRANK R. RANKINS; DOROTHY SIMS, wife of/
and; EARL SIMS, JR.,

                    Defendants-Counter Claimants-Appellees.

                    versus

DOCTOR'S ASSOCIATES, INC., doing
business as Subway; FREDERICK A. DELUCA,

                    Counter Defendants-Appellants.

---------------------------------------------

EARL SIMS; SUBWAY DEVELOPMENT OF
LOUISIANA, INC.; SUBWAY MANAGEMENT
GROUP OF LOUISIANA,

                                    Plaintiffs-Appellees,

                    versus

DOCTOR'S ASSOCIATES, INC.; FREDERICK
DELUCA; SUBWAY RESTAURANTS, INC.,

                                    Defendants-Appellants.

Appeals from the United States District Court for the

March 24, 1999

Before JOLLY, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:


Doctor's Associates, Inc. ("DAI") and companies associated with DAI appeal a district court ruling denying their motion for a stay pending arbitration. The district court held that DAI and its associates had invoked the judicial process thereby creating a significant delay that prejudiced the opposing parties and that DAI had therefore waived its right to arbitration. Because DAI has not invoked the judicial process with respect to the claim it wishes to arbitrate and because there is no evidence that the opposing parties have been prejudiced by any delay, we reverse.

I

This case involves a franchisor-franchisee relationship gone sour. Subway, the chain sandwich shop, sells franchises through DAI. Earl and Dorothy Sims and various other partners ("the franchisees"), ran four Subway franchises in the 1980's. Earl Sims was also a Subway Development Agent ("D.A.") for the Baton Rouge area and, on a temporary basis, for the New Orleans area. The franchisees' agreements with DAI, contained broad arbitration

2

clauses.  Earl Sims's D.A. contract with DAI contained a similar arbitration clause.

The franchisees subletted real estate and leased equipment from DAI's affiliated companies, Subway Restaurants, Inc. ("SRI") and Subway Sandwich Shops ("SSS"), both of which leased real estate, and Subway Equipment Leasing ("SEL"), which leased store equipment.  The franchisees' real estate subleases and the equipment leases did not contain arbitration clauses.

In March 1988, Earl Sims, much to his displeasure, was replaced by another D.A. in the New Orleans area.  In May of 1988, he filed an arbitration demand with the American Arbitration Association ("AAA"), claiming that DAI had breached the D.A. agreement.  Subsequently, the franchisees defaulted on their real estate and equipment leases.  Shortly thereafter, the litigation began in earnest.

In November 1988, SEL and SRI sued the franchisees in United States District Court for the Eastern District of Louisiana to recover amounts due under the equipment and real estate contracts for one of the franchises ("the 1988 federal case").  The claims made by SEL and SRI were under their respective contracts with the franchisees, for which there were no arbitration clauses.  The franchisees responded by filing what they styled as a counterclaim against DAI and Frederick DeLuca, one of DAI's principals.  Although neither DAI nor DeLuca were parties to the lawsuit, the

3

franchisees claimed that they should be joined as SEL and SRI were merely extensions of DAI. The district court apparently permitted this joinder.[1] The counterclaim alleged similar claims to those made by Sims in his arbitration demand.

A day before the franchisees filed their counterclaim in the 1988 federal case, SEL filed an involuntary bankruptcy petition against the franchisees. By 1990, SEL, SRI and SSS had all filed separate, amended involuntary petitions against the franchisees in bankruptcy court. None of the bankruptcy petitions involved arbitrable claims. In December of 1990, the bankruptcy court entered orders for relief, granting the involuntary petition in each proceeding. The district court reversed the bankruptcy court, holding that SEL, SRI, and SSS were not separate entities for purposes of 11 U.S.C. § 303(b)(1). On appeal, we reversed the holding that SEL, SRI, and SSS were separate entities. Matter of Sims, 994 F.2d 210 (5th Cir. 1993). The franchisees then appealed to the Supreme Court, which denied certiorari in 1994. Sims v. Subway Equipment Leasing Corporation, 510 U.S. 1049 (1994). The bankruptcy proceedings were finally resolved in 1996.

---

[1]This point is not entirely clear. Normally, such a joinder would raise an issue regarding whether DAI and DeLuca were properly joined under Fed. R. Civ. P. 14(a). Because the 1988 case was subsequently consolidated with the 1990 case, in which DAI and DeLuca were named defendants, and because this issue was not argued on appeal, we assume that DAI and DeLuca are proper parties in this appeal.

4

In the interim, the franchisees had filed two lawsuits of their own. In July 1989, they filed a suit in the District Court for East Baton Rouge Parish for damages against DAI, DeLuca, and SSS. That case was stayed while the bankruptcy case was pending and, after discharge, the state granted DAI's motion to stay the matter pending arbitration. In February of 1990, Sims sued DAI and DeLuca in the Orleans Parish District Court. DAI removed the suit to federal court, where it was consolidated with the 1988 federal case.

The consolidated case was stayed pursuant to the bankruptcy proceedings. At approximately the same time, pursuant to a letter sent by counsel for DAI, the AAA decided to hold Earl Sims's arbitration in abeyance until the bankruptcy proceedings were resolved. Sims apparently did not object to the arbitration proceeding being held in abeyance. When the bankruptcy proceedings concluded in 1996, the franchisees moved to restore their actions in the consolidated case to the active docket. After the district court reopened the franchisees' actions, DAI filed a demand for arbitration with the AAA and moved to stay the litigation pending arbitration. The district court denied the motion, reasoning that DAI waived its right to compel arbitration. DAI has filed a timely appeal.

On appeal, DAI makes two arguments. First, DAI contends that the district court erred when it held that DAI had waived its right

to arbitrate claims related to the D.A. agreement. Second, DAI argues that, provided it is correct that the district court should stay the franchisees' claims against DAI pending arbitration, then the district court should also stay the claims against SEL, SRI, and SSS as well. We address each argument in turn.

## II

We review the issue of whether a party's conduct amounts to a waiver of arbitration <u>de</u> <u>novo</u>. <u>Walker v. J.C. Bradford & Co.</u>, 938 F.2d 575, 577 (5th Cir. 1991). The factual findings underlying a district court's waiver determination are reviewed for clear error. <u>See</u> <u>id.</u> at 576. "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." <u>Miller Brewing Co. v. Fort Worth Distrib. Co.</u>, 781 F.2d 494, 497 (5th Cir.1986).

There is a strong presumption against waiver of arbitration. <u>See, e.g.</u>, <u>Lawrence v. Comprehensive Business Services Co.</u>, 833 F.2d 1159, 1164 (5th Cir. 1987) ("Waiver of arbitration is not a favored finding and there is a presumption against it."); <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 24-25 (1983) ("[A]s a matter of law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration."). Accordingly, a party alleging waiver of arbitration must carry a heavy burden. <u>Associated Builders v. Ratcliff Constr. Co.</u>, 823 F.2d 904, 905 (5th Cir. 1987).

Walker provides an example of this court's "hesitat[ion] to find that a party has waived its contractual right to arbitration." 938 F.2d at 577. In Walker, the plaintiffs sued in state court, alleging state securities law violations. Instead of immediately demanding arbitration, the defendant answered the complaint and participated in discovery. Thirteen months later, after the plaintiffs moved to transfer the case, the defendant sought to enforce its contractual right to arbitration. Despite the defendant's delay and participation in the lawsuit, this court held that the defendant had not waived arbitration because the plaintiffs failed to show that they were "materially prejudiced" by the delay. Id. at 578.

Before proceeding to the arguments in this case, we should note that the Second Circuit has addressed the waiver issue in great detail with respect to litigation involving one of the parties before this court, DAI. In Doctor's Associates, Inc. v. Distajo, the Second Circuit considered and rejected challenges to the arbitration clause in a Subway franchise agreement. 66 F.3d 438 (2d Cir. 1995) ("Distajo I"), cert. denied, 517 U.S. 1120 (1996). The court held that "[i]f the alleged violations of the subleases were premised on violations of the franchise agreement (which DAI was contractually bound to resolve through arbitration) then DAI did litigate substantial issues going to the merits, and

7

the only remaining question will be whether the franchisees suffered prejudice from the eviction proceedings." <u>Id.</u> at 457.

In a subsequent appeal of <u>Distajo</u>, the Second Circuit further delved into the meaning of prejudice for purposes of a waiver of an arbitration agreement: "prejudice . . . refers to the inherent unfairness--in terms of delay, expense, or damage to a party's legal position--that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." <u>Doctor's Associates v. Distajo</u>, 107 F.3d 126, 134 (2d Cir. 1997), <u>cert.</u> <u>denied</u>, 118 S.Ct. 365 (1997) ("<u>Distajo II</u>"). However, in <u>Distajo II</u>, the court held that, even where DAI directed its affiliates to sue pursuant to cross-default clauses based on franchise agreement breaches, there was no waiver of DAI's right to arbitrate the franchisees' claims. <u>Id.</u> at 132.

## III

In this case, the arbitration clause in the D.A. agreement covers "[a]ny controversy or claim arising out of or relating to this contract or the breach thereof." This language clearly covers the franchisees' claims against DAI. Absent waiver, the FAA would require the district court to stay the litigation pending arbitration. <u>See</u> <u>In re Complaint of Hornbeck Offshore Corp.</u>, 981 F.2d 752, 754 (5th Cir. 1993).

The district court provided the following explanation for concluding that DAI waived its right to arbitrate:

[The] disputes in these actions were not arbitrated at their inception because of the actions of the Subway entities. Movants invoked the judicial process, in this court and in bankruptcy court, creating an eight year delay which has prejudiced the opposing parties. Movants, the Subway entities, waived their right to arbitration.

DAI argues that the district court erred when it concluded that DAI invoked the judicial process.

DAI argues that it has not engaged in any litigation on the merits of the claims it is seeking to arbitrate. None of the actions brought by a DAI affiliate involved claims arising out of a contract containing an arbitration clause. SEL and SRI brought the 1988 federal action for breach of their respective contracts, neither of which contained arbitration clauses. The only other action initiated by a DAI affiliate is the bankruptcy proceeding, which again did not involve arbitrable claims. In contrast, the franchisees have, on three separate occasions, sought to litigate arbitrable claims related to the D.A. agreement: (1) in their counterclaim in the 1988 federal case; (2) in their petition filed in Baton Rouge Parish; and (3) in their petition filed in Orleans Parish. On its face, at least, it would appear that it is the franchisees, not DAI, that have invoked the judicial process.

The franchisees make two arguments to support their claim that DAI has invoked the judicial process to their detriment. First, they argue that DAI and its affiliates are so related, and the claims brought by the affiliates so inextricably intertwined, that

9

DAI invoked the judicial process when its affiliates brought the 1988 federal action and the bankruptcy action. The franchisees second argument is that DAI's affiliates acted as an agents for DAI in filing the bankruptcy proceeding so that DAI could stay Sims's arbitration proceeding.

The franchisees contend that the district court correctly concluded that DAI invoked the judicial process through its affiliates, insisting that the affiliates were DAI's alter egos or at least its agents.[2] This argument brings up an issue we addressed in Lawrence, and which the Second Circuit has addressed in greater detail since--whether a party can invoke the judicial process if it litigates a non-arbitrable claim against a party with

---

[2]The franchisees concede that, in Matter of Sims, 994 F.2d 210, 217-20 (5th Cir. 1993), we held that the bankruptcy court's finding that DAI's affiliates were not its alter egos was not clearly erroneous. Even so, the appellees note that several post-Sims cases have found an alter ego relationship between DAI and its affiliates. See Janotta v. Subway Sandwich Shops, Inc., 125 F.3d 503, 510 (7th Cir. 1997) (noting that DAI did not appeal the jury finding that SSS was DAI's alter ego); Doctor's Associate's, Inc. v. Distajo, 944 F.Supp. 1010, 1014 (D.Conn. 1996) (stating that "DAI has conceded that the leasing companies were its alter egos"); Pine Tree Associates v. Doctor's Associates, Inc., 654 So.2d 735, 739-40 (La. 1995) (finding sufficient evidence to warrant a trial on the issue of whether DAI's affiliates were its alter egos).
The franchisees also contend that DAI is responsible for SEL's conduct in initiating the involuntary bankruptcy proceeding because SEL merged into DAI on December 31, 1996. The franchisees claim that, as a Florida corporation, DAI is "liable and responsible" for SEL's pre-merger conduct pursuant to Fla. Stat. Ann. § 607.1106(1)(c)).
Because we need not make a determination of the exact relationship between DAI and its affiliates to resolve the matter before us, we will not do so.

10

whom it has arbitrable claims.  <u>Lawrence</u>, 833 F.2d at 1165 (holding that franchisor who sued franchisees had not invoked the judicial process for purposes of a subsequent dispute); <u>Distajo II</u>, 107 F.3d at 132-33 ("only prior litigation of the same legal and factual issues as those the party now wants to arbitrate results in waiver of the right to arbitrate); <u>see also</u> <u>Gingiss Int'l, Inc. v. Bormet</u>, 58 F.3d 328, 330(holding that a franchisor "did not waive . . . [his arbitrable] claims by prosecuting the unlawful detainer action in California state court because that action involved different issues").  We hold today that a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate.

The franchisees argue, however, that the dispute over the D.A. agreement is so inextricably intertwined with the actions brought by DAI's affiliates that they amount to the same action.  We cannot agree.  DAI's affiliates sought to recover for obligations under their respective contracts.  These contracts, all related to obligations for leasing equipment and real estate, in no instance involved the D.A. agreement between Sims and DAI.  Because the actions brought by the DAI affiliates involved claims that are different from the one DAI now seeks to arbitrate, it does not matter whether DAI's affiliates were the alter ego, agent, or precursor to DAI.  Even if the affiliates and DAI were one and the same, DAI still would not have invoked the judicial process.

11

The franchisees further argue that DAI encouraged its affiliates to file actions against the franchisees so that DAI could postpone the arbitration proceeding. This argument is a relatively novel one. The franchisees essentially contend that by using the bankruptcy proceeding as an excuse to delay the Simses' arbitration, DAI invoked a judicial process (the bankruptcy proceeding) to the prejudice of the franchisees (who were subjected to an eight-year delay). Even if we accepted the reasoning of this argument, which we do not, the franchisees' argument would still fail on the record before us. DAI did request that Sims's arbitration be held in abeyance pending the bankruptcy proceeding and all of the parties now agree that there was no legally binding reason for the arbitrator to do so. The franchisees, however, never challenged the arbitrator's decision. We will not construe a decision to delay arbitration as prejudicial to the franchisees, when the franchisees never objected to that delay.

More importantly, the reasoning used by the franchisees is ultimately specious. As we make clear today, in order to invoke the judicial process, a party must have litigated the claim that the party now proposes to arbitrate. Here, the franchisees argue that, by asserting unrelated litigation--the bankruptcy proceeding--as a basis for delaying the arbitration proceeding, DAI has "invoked the judicial process" and therefore waived its right to arbitrate. This argument, however, confuses our use of the term

"invoke" in past cases.  We use the term to describe the act of implementing or enforcing the judicial process, not the act of calling upon for support or assistance, as say, one would invoke a spirit or the elements.[3]  Thus, to invoke the judicial process, the waiving party must do more than call upon unrelated litigation to delay an arbitration proceeding.  The party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.  There is no evidence that DAI's actions or, assuming arguendo that DAI's associates' actions can be imputed to DAI, the actions of SEL, SRI, or SSS amount to this threshold showing of an attempt to invoke the judicial process.

We therefore find no basis for concluding that DAI should be denied an opportunity to arbitrate this claim.  DAI did not invoke the judicial process with respect to the arbitrable claim at issue here.  Even if the franchisees could show that DAI intentionally brought the bankruptcy proceeding to delay arbitration, the franchisees have not shown that they were prejudiced as a result of that stay.  We therefore hold that the district court erred when it denied DAI's motion for a stay pending arbitration.

---

[3]See Webster's Third International Dictionary 1191 (1993). Both uses of "invoke" are accepted definitions.  In this context, however, we cannot see a plausible reading of the term "invoke" that would lead to our treating the "judicial process" as if it were a specter, ghost, or deity.  In this context, we regard the judicial process as a mechanism: to invoke it is to implement it.

Having concluded that DAI is entitled to a stay pending arbitration, we now must address the scope of the stay order. DAI argues that, even though SEL, SRI, and SSS have no right to arbitrate the claims brought against them by the franchisees, the district court should stay the litigation with respect to them as well. DAI argues that the FAA requires the district court to stay litigation where issues presented in the litigation are the subject of an arbitration agreement. See 9 U.S.C. § 3.

Based on the record before us, we find merit in DAI's argument. In Sam Reisfield & Son Import Co. v. S.A. Eteco, we held that an order to stay covering claims against all defendants was proper, even though two defendant were not part of the arbitration agreement. 530 F.2d 679, 681 (5th Cir. 1976). Although the DAI affiliates themselves have no right to arbitration, the claim brought by the franchisees is based entirely on the franchisees' rights under the D.A. contract. We therefore fail to see how litigation could proceed on the franchisees' claims without adversely affecting DAI's right to arbitration. See, e.g., Kroll v. Doctor's Associates, Inc., 3 F.3d 1167, 1171 (7th Cir. 1993) (stating that a decision about whether to grant a stay should be motivated by the court's "concern that litigation against a party not bound by an arbitration provision may impair an arbitrator's

consideration of claims against a party that is compelled to arbitrate.").

V

For the foregoing reasons, we hold that DAI, SEL, SRI, and SSS are entitled to a stay pending arbitration of the franchisees' claims against DAI. We therefore REVERSE the district court and REMAND for further proceedings not inconsistent with the opinion.

REVERSED and REMANDED.

15