# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-50847

United States Court of Appeals
Fifth Circuit

**FILED**

May 19, 2017

Lyle W. Cayce
Clerk

LUCINDA VINE; KRISTY POND,

      Plaintiffs - Appellees

v.

PLS FINANCIAL SERVICES, INCORPORATED; PLS LOAN STORE OF TEXAS, INCORPORATED,

      Defendants - Appellants

---

Appeals from the United States District Court
for the Western District of Texas
USDC No. 3:16-CV-31

---

Before BARKSDALE, GRAVES, and HIGGINSON, Circuit Judges.

PER CURIAM:*

    Appellants PLS Financial Services, Inc., and PLS Loan Store of Texas, Inc. (collectively "PLS"), appeal the district court's denial of its motion to dismiss and to compel arbitration. Because PLS substantially invoked the judicial process to the detriment or prejudice of Appellees Lucinda Vine and

---

    * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-50847

Kristy Pond when it submitted false worthless check affidavits, we AFFIRM the judgment of the district court.

## BACKGROUND

PLS's business is to provide short-term loans to customers. To obtain loans, PLS customers must present blank or post-dated checks for the amount borrowed plus a finance charge and a credit-access-business fee. They must also sign PLS's Loan Disclosure, Promissory Note and Security Agreement and a Credit Services Agreement (the "Agreement"), which requires arbitration of all "disputes." The Agreement states:

> For purposes of this Waiver of Jury Trial and Arbitration Provision . . . the words "dispute" and "disputes" are given the broadest possible meaning and include, without limitation (a) all claims, disputes, or controversies arising from or relating directly or indirectly to signing of this Arbitration Provision, the validity and scope of this Arbitration Provision, the validity and scope of this Arbitration Provision and any claim or attempt to set aside this Arbitration Provision . . . .

Vine and Pond allege that during the loan application process, PLS asked them for blank or post-dated checks, but assured them that the checks would not be cashed and would only be used to verify checking accounts. However, PLS cashed the checks as soon as Vine and Pond defaulted on their loans, and then submitted worthless check affidavits to local district attorneys' offices when the checks bounced. According to Vine and Pond, PLS's actions were part of a regular strategy whereby PLS submitted false worthless check affidavits to achieve repayment of the loans and to avoid arbitrating any collection actions. In addition, Vine and Pond allege that PLS knew that its

2

No. 16-50847

submission of false worthless check affidavits violated Texas law. *See* Tex. Fin. Code §§ 393.201(c) and 292.301.

Soon after submission of the worthless check affidavits, Vine and Pond received letters from their local district attorneys' offices, notifying them that they would need to pay restitution to PLS and statutory fees or face criminal proceedings on theft by check charges.

On January 26, 2016, Vine and Pond initiated the present class action against PLS on behalf of themselves and all similarly-situated plaintiffs, alleging: (1) malicious prosecution; (2) Texas Deceptive Trade Practices Act violations; (3) fraud; and (4) Texas Finance Code § 392.301 violations. On March 23, 2016, PLS moved to dismiss the proceedings and compel Vine and Pond to arbitrate their claims pursuant to the Agreement. On June 6, 2016, the district court denied PLS's motion to dismiss, stating that, even if Plaintiffs had agreed to arbitration, PLS had waived its right to compel them to do so by submitting the worthless check affidavits. PLS appeals from the district court's denial of their motion to dismiss and to compel arbitration.

## STANDARD OF REVIEW

"We review the issue of whether a party's conduct amounts to a waiver of arbitration *de novo*." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999). A motion to compel arbitration is generally treated as a motion to dismiss. *See Suburban Leisure Ctr., Inc. v. AMF Bowling Prods., Inc.*, 468 F.3d 523, 525 (8th Cir. 2006). Consequently, we accept Vine and Pond's well-pleaded facts as true and view them in the light most favorable to them. *Id.*

No. 16-50847

## DISCUSSION

PLS makes three arguments on appeal. It contends that the district court erred by: (1) deciding whether PLS waived its right to compel arbitration by participating in litigation conduct; (2) ignoring the parties' express agreement to arbitrate all disputes, including any litigation-conduct waiver claims; and (3) concluding that PLS waived its right to arbitrate by submitting worthless check affidavits. None of these arguments are persuasive.

I.

First, the district court did not err by deciding the litigation-conduct waiver. In *Tristar Fin. Ins. Agency v. Equicredit Corp. of Am.*, 97 F. App'x 465, 464 (5th Cir. 2004), we recognized that when "waiver . . . depends on the conduct of the parties before the district court," "the court, not the arbitrator, is in the best position to decide whether the conduct amounts to a waiver under applicable law." Here, the district court's waiver decision depended on the conduct of PLS—a party to the litigation. Consequently, the district court was "in the best position" to decide the litigation-conduct waiver. *Id.*

PLS contends that the Supreme Court's decision in *BG Group, PLC v. Republic of Argentina*, 134 S. Ct. 1198 (2014), abrogates any persuasive effect of our *Tristar* decision. In *BG Group*, the Supreme Court stated that courts should decide issues "such as whether the parties are bound by a given arbitration clause, or whether an arbitration clause in a concededly binding contract applies to a particular type of controversy." *BG Group*, 134 S. Ct. at 1206 (quotations omitted). But arbitrators should decide questions "about the meaning and application of particular procedural preconditions for the use of arbitration." *Id.* at 1207. Because *BG Group* defines "claims 'of waiver, delay, or a like defense to arbitrability'" as procedural, PLS argues that litigation-

4

conduct waiver should be decided by an arbitrator, and not a court. *See id.* at 1202 (quoting *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 (1983)). PLS notes that in *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) (quoting *Moses H. Cone Memorial Hospital*, 460 U.S. at 25), the Supreme Court also stated that "claims 'of waiver, delay, or a like defense to arbitrability'" are procedural and thus arbitrator-committed.

Despite the surface appeal of this argument, a careful reading of *BG Group* and *Howsam* demonstrates that it is misguided. When confronted with the identical language in *Howsam*, the Third Circuit stated:

> Properly considered within the context of the entire opinion . . . we believe it becomes clear that the Court was referring only to waiver, delay, or like defenses arising from non-compliance with contractual conditions precedent to arbitration . . . and not to claims of waiver based on active litigation in court.

*See Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 219 (3d Cir. 2007). Unlike other types of waiver, litigation-conduct waiver "implicates courts' authority to control *judicial* procedures or to resolve issues . . . arising from *judicial conduct*." *Id.* (emphasis in the original). Consequently, because "parties would expect the court to decide [litigation-conduct waiver] itself," the Third Circuit was unconvinced that the Supreme Court had meant for arbitrators, and not courts, to presumptively decide litigation-conduct waiver. The majority of our sister circuits agree. *See Marie v. Allied Home Mortg. Corp.*, 402 F.3d 1, 14 (1st Cir. 2005) ("We hold that the Supreme Court . . . did not intend to disturb the traditional rule that waiver by conduct, at least due to litigation-related activity, is presumptively an issue for the court."); *Grigsby & Assocs., Inc. v. M. Sec. Inv.*, 664 F.3d 1350, 1353 (11th Cir. 2011) (same); *JPD, Inc. v. Chronimed Holdings, Inc.*, 539 F.3d 388, 393 (6th Cir. 2008) (same); *Martin v. Yasuda*, 829

F.3d 1118, 1122-23 (9th Cir. 2016) (same). *But see Nat'l Am. Ins. Co. v. Transamerica Occidental Life Ins. Co.*, 328 F.3d 462, 466 (8th Cir. 2003) (holding that all waiver challenges should be committed to an arbitrator). We note that a majority of the decisions addressing litigation-conduct waiver pre-date *BG Group*, but the logic of those decisions interpreting *Howsam* is equally applicable to *BG Group*. Consequently, the district court did not err.

## II.

Second, the parties' express agreement does not address litigation-conduct waiver. As a preliminary matter, PLS waived this issue by raising it for the first time in its motion to reconsider. *See LeClerc v. Webb*, 419 F.3d 405, 412 n.13 (5th Cir. 2005) ("A motion for reconsideration may not be used to . . . introduce new arguments."). However, even if PLS had not waived the issue, we would reach the same conclusion.

While the language of an arbitration agreement can displace the presumption that a court should decide an issue, "[a]n issue that is presumptively for the court to decide will be referred to the arbitrator for determination only where the parties' arbitration agreement contains 'clear and unmistakable evidence' of such an intent." *See Ehleiter*, 482 F.3d at 221 (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

Here, we do not find "clear and unmistakable evidence" that the parties intended to arbitrate litigation-conduct waiver. *Id.* Though the parties' agreement requires arbitration of "any claim or attempt to set aside this Arbitration Provision," it does not explicitly mention litigation-conduct waiver. *See Principal Investments, Inc. v. Cassandra Harrison*, 366 P.3d 688, 696 (Nev. 2016) ("Had Rapid Cash intended to delegate litigation-conduct waiver to the arbitrator, rather than the court, the agreements could and should have been

No. 16-50847

written to say that explicitly."). Furthermore, we "cannot interpret the Agreement's silence regarding who decides the waiver issue here 'as giving the arbitrators that power for doing so . . . [would] force [an] unwilling part[y] to arbitrate a matter he reasonably would have thought a judge, not an arbitrator, would decide.'" *Ehleiter*, 482 F.3d at 222 (quoting *First Options*, 514 U.S. at 945). Because the Agreement does not contain "clear and unmistakable evidence" of an intent to arbitrate the instant litigation-conduct waiver issue, the district court did not err. *Id.* at 221.

## III.

Third, the district court correctly found that Vine and Pond plausibly alleged that PLS waived arbitration when it submitted false worthless check affidavits. "The question of what constitutes a waiver of the right of arbitration depends on the facts of each case." *Tenneco Resins, Inc. v. Davy Int'l AG*, 770 F.2d 416, 420 (5th Cir. 1985). "Waiver will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Subway Equipment Leasing Corp.*, 169 F.3d at 326 (quoting *Miller Brewing Co. v. Fort Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)).

## A.

A party substantially invokes the judicial process when it "engage[s] in some overt act in court that evinces a desire to resolve the arbitration dispute through litigation." *Id.* "We use the term [invoke] to describe the act of implementing or enforcing the judicial process, not the act of calling upon for support or assistance, as say, one would invoke a spirit or the elements." *Id.*

7

No. 16-50847

As the district court noted, whether PLS sufficiently implemented the criminal justice system to its own benefit such that its conduct constitutes a substantial invocation of the judicial process is a matter of first impression before this Court. On this narrow issue, we find no guidance from any of our sister circuits.

Here, Vine and Pond allege that PLS systematically engaged in a strategy of submitting worthless check affidavits that falsely stated that borrowers had committed theft by check. In addition, Vine and Pond claim that PLS submitted these false affidavits solely to achieve repayment of loans and to avoid arbitrating any collection actions. According to Vine and Pond, PLS also knew that the affidavits violated Texas law. Texas law does not permit a lender to "threaten or pursue criminal charges against a consumer related to a check . . . in the absence of forgery, fraud, theft, or other criminal conduct." *See* Tex. Fin. Code § 393.201(c); *see also* Tex. Fin. Code § 392.301.

Documents incorporated by reference into Vine and Pond's complaint also show the mechanics of PLS's alleged course of conduct.[1] One of the affidavits submitted by PLS and a letter received by a borrower from her local district attorney's office show that the district attorney's office sent out the letter the day after it stamped the corresponding PLS affidavit as "received." This comparison plausibly suggests that when the local district attorney's office sent out its letter requesting restitution, it relied solely on PLS's representations that the customer had committed theft by check. These documents also suggest that the district attorney's office may not have

---

[1] In ruling on motions to dismiss, courts may examine documents incorporated into the complaint by reference. *See Lormand v. US Unwired, Inc.*, 565 F.3d 228, 251 (5th Cir. 2009).

exercised robust discretion in reviewing PLS's affidavits before initiating criminal proceedings against PLS customers. As the district court noted,

> If what Plaintiffs allege is true, Defendants conduct is merely a pretext to obtain a favorable ruling, which Defendants can then use in either defending or prosecuting a lawsuit brought by or against Plaintiffs in an arbitration proceeding.

Moreover, if true, PLS's conduct is inconsistent with a right to arbitrate.

In determining whether PLS's alleged actions are consistent with a right to arbitrate, three state-court decisions are instructive. In *Principal Investments*, 366 P.3d at 690–91, the Nevada Supreme Court found that Defendant Rapid Cash waived its right to arbitrate when it secured thousands of default judgments against the named plaintiffs and other borrowers by submitting false affidavits prepared by its process server. The court explained: "By initiating a collection action in justice court, Rapid Cash waived its right to arbitrate to the extent of inviting its borrower to appear and defend on the merits of that claim." *Id.* at 697. It also stated:

> If the judgment Rapid Cash obtained was the project of fraud or criminal misconduct and is unenforceable for that reason, it would be unfairly prejudicial to the judgment debtor to require arbitration of claims seeking to set that judgment aside, to enjoin its enforcement, and otherwise to remediate its improper entry.

*Id.* at 697–98.

The Texas Court of Appeals decision in *In re Christus Spohn Heath Sys. Corp.*, 231 S.W.3d 475 (Tex. App.—Corpus Christi 2007, no pet.), is also instructive here. *Christus Spohn* was a premises liability case arising out of a murder in a hospital parking lot. When the murder victim's husband filed a

No. 16-50847

civil lawsuit against the hospital, the hospital moved to compel arbitration. *Id.* at 481. However, the court denied the hospital's motion because the hospital had sought an order of contempt against the husband's counsel during the criminal proceedings. *Id.* The court explained that while "ordinarily [it] would not consider actions in a separate cause as indicative of waiver," the hospital's actions were "part of its strategic plan of defense in the underlying matter that would be inconsistent with a right to arbitrate." *Id.*

As in *Christus Spohn*, PLS allegedly submitted the false worthless check affidavits as "part of its strategic plan of defense in the underlying matter" to achieve loan repayment. *See Christus Spohn*, 231 S.W.3d at 481. As in *Principal Investments*, PLS allegedly derived benefit by engaging the criminal justice system through improper conduct. If it is true that PLS's submission of worthless check affidavits was fraudulent, "it would be unfairly prejudicial to [Vine, Pond, and similarly situated borrowers] to require arbitration of claims . . . to remediate [the] improper entry" of the affidavits. *See Principal Investments*, 366 P.3d at 690. Thus, Vine and Pond have plausibly alleged that PLS waived its right to arbitrate when it submitted false worthless check affidavits.

Nevertheless, PLS argues that we should follow the Texas Court of Appeals decision in *Cash Biz, LP v. Henry et al.,* 2016 WL 4013794 (Tex. App.—San Antonio 2016, pet. filed). In *Cash Biz*, the court found that Defendant Cash Biz did not waive its right to arbitrate when it "contacted the applicable local district attorneys and submitted information necessary to make a criminal complaint." *Cash Biz,* 2016 WL 4013794, at *2. The court stated that "courts consistently evaluate a party's conduct *after* suit is filed to determine whether it waived its right to arbitration. Here, the parties focus on Cash Biz's conduct in a separate proceeding *before* the underlying litigation was filed by the

Borrowing Parties." *Id.* at \*8 (emphasis in the original). The court also reasoned that "[i]n Texas, the filing of criminal charges and initiation of criminal process is the discretion of the prosecuting attorney." *Id.* Consequently, the preliminary act of "filing of suit or initiation of litigation is not 'substantial invocation of judicial process.'" *Id.* (quoting *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512 (Tex. 2015)).

However, despite the obvious factual similarities between *Cash Biz* and this case, we decline to follow *Cash Biz* for the following reasons: As the dissent in *Cash Biz* aptly noted, here, "we are presented with the unique situation of a civil lawsuit and a criminal proceeding, both of which arise out of the same civil debt." *Cash Biz*, 2016 WL 4013794, at \*10 (Martinez, J., dissenting). Moreover, it is alleged that the criminal proceedings were an integral component of PLS's litigation strategy to collect on outstanding debt. If PLS attempted to "game the system" by initiating theft by check proceedings in place of submitting collection actions to an arbitrator, PLS should not be allowed "a second bite at the apple through arbitration" to resolve related issues. *See Cargill Ferrous Int'l v. SEA PHX. MV*, 325 F.3d 695, 701 (5th Cir. 2003) ("Under the facts of this case, it is clear Serene is not gaming the system by seeking a win at trial, and in the case of loss, anticipating a second bite at the apple through arbitration.").

In addition, we also agree with the *Cash Biz* dissent that the majority in that case did not sufficiently consider the critical role that the Defendant played in the criminal proceedings as the complainant. *See Cash Biz*, 2016 WL 4013794, at \*10 (Martinez, J., dissenting) ("[W]hile the formal parties in a criminal proceeding are the defendant and the State of Texas, the victim or complaintant [sic] has a personal interest in the prosecution and thus plays a unique role in criminal proceedings."). Here, Vine and Pond allege that PLS

had a great "personal interest in the prosecution" as it constituted a means to achieve repayment of its loans while avoiding arbitration. Furthermore, documents incorporated by reference into Vine and Pond's complaint arguably show that PLS drove all theft by check criminal proceedings when it submitted the worthless check affidavits to local district attorneys' offices. In other words, had PLS not submitted the worthless check affidavits, "no criminal prosecution would have occurred." *See id.* at *9 (Martinez, J., dissenting).

Therefore, by allegedly submitting false worthless check affidavits, PLS "invoke[d] the judicial process to the extent it litigate[d] a specific claim it subsequently [sought] to arbitrate." *See Subway Equip. Leasing Corp.*, 169 F.3d at 328. As the district court made clear, "Defendants have initiated a process that invites Texas district attorneys' offices to address issues that are at stake in the instant action." Most obviously, all claims involve whether PLS misled or threatened Vine, Pond, and the class of PLS customers they purport to represent in order to obtain outstanding debt owed to PLS.

## B.

Vine and Pond have also demonstrated detriment or prejudice from PLS's submission of worthless check affidavits. "Prejudice in the context of arbitration waiver refers to delay, expense, and damage to a party's legal position." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 910 (5th Cir. 2009). Here, Vine and Pond would have borne the costs of defending against any theft by check prosecution. In addition, they would have suffered the preclusive effect of a conviction in any subsequent litigation. Consequently, they have sufficiently shown detriment or prejudice. *See Subway Equip. Leasing Corp.*, 169 F.3d at 327.

No. 16-50847

## CONCLUSION

For the reasons stated above, we AFFIRM the judgment of the district court.

No. 16-50847

STEPHEN A. HIGGINSON, Circuit Judge, dissenting:

Although I agree with the majority that the district court did not err by deciding litigation-conduct waiver, I would hold that PLS's conduct did not amount to waiver of arbitration. I believe the question is close, due largely to the unique procedural nature of theft-by-check cases—especially here, where there is evidence that PLS not only intended to force repayment of these loans by submitting worthless check affidavits, but in fact achieved that result. However, my read of our law in *Subway Equipment* is that more is required for a party to have "substantially invoke[d] the judicial process." *Subway Equipment Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999).

To the extent it applies, my read of Texas law is the same. *See Cash Biz, LP v. Henry*, No. 04-15-00469-CV, 2016 WL 4013794, at *6 (Tex. App.—San Antonio July 27, 2016, pet. filed) ("To waive arbitration, the party must engage in some overt act in court that evince[s] a desire to resolve the arbitrable dispute through litigation rather than arbitration." (internal quotation marks and citations omitted)). Furthermore, even accepting its legal framework, I view the Nevada Supreme Court's decision in *Harrison* as distinguishable due to the particularly overt and affirmative steps taken by the lender in that case, namely, "fil[ing] . . . individual collection actions in justice court" and "secur[ing] thousands of default judgments against . . . borrowers who failed to appear and defend the collection lawsuits." *Principal Invs., Inc. v. Harrison*, 366 P.3d 688, 690–91 (Nev. 2016).

I share the majority's discomfort that PLS may be gaming the system through its submission of the worthless check affidavits, which is inconsistent with the company's current pro-arbitration stance. As Appellees note, attempting to secure repayment through the local district attorney's office not

14

only provides PLS with two bites at the apple, but also allows it to avoid potential costs associated with arbitration, such as arbitrator and attorney's fees. Nevertheless, I believe our law requires something more than the actions alleged here.

Accordingly, I respectfully dissent.