# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 19-40353

United States Court of Appeals
Fifth Circuit

**FILED**

March 30, 2020

Lyle W. Cayce
Clerk

Consolidated with 19-40414

LUCINDA VINE; KRISTY POND,

      Plaintiffs - Appellees

v.

PLS FINANCIAL SERVICES, INCORPORATED; PLS LOAN STORE OF
TEXAS, INCORPORATED,

      Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas
USDC No. 4:18-CV-450

Before CLEMENT, HIGGINSON, and ENGELHARDT, Circuit Judges.

PER CURIAM:*

      We hold that this court's prior opinion in *Vine v. PLS Financial Services, Inc.* (*Vine I*), 689 F. App'x 800 (2017), remains the law of the case, and therefore affirm the district court's order denying PLS's motion to reconsider. We also affirm the district court's class-certification order.

---

      * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 19-40353

# I

*Vine I* describes the background of this case in detail, so we will add only the subsequent developments.

After this court affirmed the district court's denial of PLS's motion to compel arbitration, the parties conducted discovery. The district court later granted PLS summary judgment on several of Vine and Pond's (the "Borrowers") claims. Among these were the Borrowers' malicious-prosecution claims, which the district court dismissed because the district attorney never filed criminal charges against the Borrowers in response to PLS's worthless-check affidavits. The partial grant of summary judgment left pending only the claims for common-law fraud and for violating Texas Finance Code § 393.305, which prohibits a "credit services organization" like PLS from "directly or indirectly engag[ing] in a fraudulent or deceptive act, practice, or course of business relating to the offer or sale of [its] services." *See also* TEX. FIN. CODE § 393.504 (designating a violation of § 393.305 as a "deceptive trade practice actionable under" the Texas Deceptive Trade Practices Act).

The following month, the Texas Supreme Court decided *Henry v. Cash Biz, LP*, 551 S.W.3d 111 (Tex. 2018). Under facts largely mirroring this case, the court held that "providing information to the district attorney and letting the chips fall where they may" did *not* amount to a substantial invocation of the judicial process, and thus did not waive the defendant's contractual right to arbitrate. *Id.* at 118. The court noted that its decision conflicted with *Vine I*, and it expressly agreed with the *Vine I* dissent. *Id.* at 118–19.

Back in the Western District of Texas, the district court then asked the parties for status updates "regarding whether the present case should proceed any differently in light of the clarification of state law" in *Cash Biz*. Per the court's order, the parties filed their status updates a few days later. PLS

argued that *Cash Biz* obligated the district court to reconsider its arbitration order. The Borrowers, unsurprisingly, argued that it did not.

On May 15, 2018, the district court held a status conference. The court stated: "I think there is nothing in [*Cash Biz*] I see that binds me to a certain result given the fact that issues relating to Texas substantive law and the Federal Arbitration Act are quite different. I will leave it at that." But the court went on to say that it would "watch that [case] and other litigation that may be going on that contains similar issues," and that it would "wait and see what happens." Counsel for PLS asked the court to clarify whether it planned "to actually issue some sort of order or opinion" on the effect of *Cash Biz*. The court responded: "I don't know I have a pending motion. I don't anticipate I will be issuing anything other than what has been issued to date."

At this conference, the court also discussed whether venue was proper in the Western District of Texas given the Borrowers' and the identified class members' domiciles. The following day, the court issued an order to show cause why it should not transfer the case to the Eastern District of Texas. The parties responded, and the court transferred the case to the Eastern District on June 25, 2018. Pursuant to the Eastern District's local rule, the transfer mooted any pending motions. *See* LOCAL RULE CV-7.

The next month, the Borrowers filed a motion for class certification in the Eastern District. Five days later, PLS filed a motion to reconsider the arbitration order in light of *Cash Biz*. The district court denied the motion to reconsider on March 25, 2019, and granted the motion for class certification on March 30. The court certified a class containing (1) "all Texas residents who defaulted on a payday loan from a PLS store," (2) "against whom [PLS] filed a criminal complaint to the District Attorney," and (3) "who paid some or all of the additional fines and fees to the D.A.'s office in connection with the letter" the DA sent threatening prosecution if the recipient did not pay.

No. 19-40353

On April 15, PLS filed a notice of appeal from the Eastern District's March 25 and March 30 orders, as well as the original arbitration order entered in the Western District.

## II

Before we address the merits of the appeal, we must verify that we have appellate jurisdiction.

We have jurisdiction to review the district court's class-certification order because this court granted PLS's timely petition for permission to appeal. *See* FED. R. CIV. P. 23(f) ("A court of appeals may permit an appeal from an order granting or denying class-action certification under this rule . . . ."); 28 U.S.C. § 1292(e) (authorizing Supreme Court to prescribe rules permitting interlocutory appeals).

Whether we have jurisdiction to review the order denying PLS's motion to reconsider its original motion to compel arbitration is more complicated. The Federal Arbitration Act provides that "[a]n appeal may be taken from . . . an order . . . denying an application . . . to compel arbitration." 9 U.S.C. § 16(a). As with other civil appeals, the notice of appeal "must be filed . . . within 30 days after entry of the judgment or order appealed from." FED. R. APP. P. 4(a)(1)(A). PLS filed its notice of appeal on April 15, 2019, nearly three years after the district court entered its original order denying PLS's motion to compel arbitration on June 6, 2016.

PLS argues that its notice was timely because the 30-day window to appeal began when the Eastern District denied PLS's motion to reconsider the arbitration order in light of *Cash Biz.* The Borrowers, by contrast, argue that the motion to reconsider did not toll the time for appealing the original arbitration order because PLS filed the reconsideration motion long after the time to appeal the original order had passed. True enough. This is not a case about "tolling" the time for appeal. *See* FED. R. APP. P. 4(a)(4)(A). We do not

4

have jurisdiction to review the original arbitration order. Rather, for us to have appellate jurisdiction, the Eastern District's order denying the motion to reconsider must *itself* be an immediately appealable order denying an application to compel arbitration. *See* 9 U.S.C. § 16(a).

As the Borrowers correctly point out, a party cannot circumvent jurisdictional time-limits for an appeal by filing a successive motion that "presents the same factual and legal bases" as the first motion and then appealing the denial of the successive motion. *Kossman Contracting Co. v. City of Houston*, 128 F. App'x 376, 377–78 (5th Cir. 2005); *see also Charles L.M. v. N.E. Indep. Sch. Dist.*, 884 F.2d 869, 870 (5th Cir. 1989) ("We have squarely held that where an appellant files a second motion to reconsider 'based upon substantially the same grounds as urged in the earlier motion,' the filing of the second motion does not interrupt the running of the time for appeal, and the appeal must be dismissed."). There is, however, an exception to this general rule "against appealing from a successive motion if there are changed circumstances, new evidence, or a change in the law." *Kossman*, 128 F. App'x at 378 (quoting *Birmingham Fire Fighters Ass'n 117 v. Jefferson County*, 290 F.3d 1250, 1254 (11th Cir. 2002)). In assessing changed circumstances, we must not conflate this threshold jurisdictional question with the merits of the appeal. *See Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 627–29 (2009). The purpose of this rule is to separate "manipulative" litigation tactics that are "nothing more than an attempt to circumvent the . . . time restriction applicable to the appeal" from "good faith" arguments—even if they are ultimately unsuccessful—that changed circumstances should alter the

No. 19-40353

outcome of the motion. *French v. Wachovia Bank*, 574 F.3d 830, 833–34 (7th Cir. 2009).[1]

Here, PLS had a good-faith argument that the *Cash Biz* decision constituted a change in the law that justified a renewed motion to compel arbitration. We do not believe that PLS filed the motion to reconsider for the purpose of evading Rule 4's time restrictions. Thus, whether PLS's motion to reconsider has merit or not, the district court's order denying that motion was an order denying an application to compel arbitration, and we have jurisdiction to review the order pursuant to 9 U.S.C. § 16(a).[2]

## III

Having confirmed our jurisdiction, we turn to the district court's denial of PLS's motion to reconsider the motion to compel arbitration. The Western District's initial arbitration order concluded that PLS waived its right to arbitrate by "substantially invok[ing] the judicial process to the detriment or prejudice of the other party." *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999) (quoting *Miller Brewing Co. v. Ft. Worth Distrib. Co.*, 781 F.2d 494, 497 (5th Cir. 1986)). Ordinarily, a district court is free to revise an interlocutory order like this one "at any time before the entry of a judgment

---

[1] Thus, our jurisdictional holding does not dictate the result of our law-of-the-case inquiry. *See infra* part III.

[2] The Borrowers assert that this was actually PLS's *second* motion to reconsider in light of *Cash Biz*. By the Borrowers' account, PLS's response to the Western District's request for a status update was effectively a motion to reconsider, which the Western District then denied at the status conference. If this were correct, then the time to appeal that order expired before PLS filed the successive motion, meaning that the motion did not toll the appeal deadline. But the transcript of the status conference contradicts the Borrowers' argument. True, the district court expressed doubt that *Cash Biz* made a relevant change in the law. But it explicitly left the issue open for further discussion. The court also made clear it was not entering an order regarding *Cash Biz* because there had been no motion to reconsider. So there was nothing for PLS to appeal at that point.

6

No. 19-40353

adjudicating all the claims and all the parties' rights and liabilities." FED. R. CIV. P. 54(b).

Here, however, given our previous decision in *Vine I*, the law-of-the-case doctrine potentially limited the district court's review. "Under that doctrine, the district court on remand, or the appellate court on a subsequent appeal, abstains from reexamining an issue of fact or law that has already been decided on appeal." *United States v. Teel*, 691 F.3d 578, 582 (5th Cir. 2012). Reexamination is permitted only if (1) there is a substantial change in the evidence, (2) there is a change in controlling law, or (3) the original decision was clearly erroneous and failing to correct it would be manifestly unjust. *Fuhrman v. Dretke*, 442 F.3d 893, 897 (5th Cir. 2006). Whether the law of the case precludes reconsideration is a question of law that we review de novo. *Med. Ctr. Pharm. v. Holder*, 634 F.3d 830, 834 (5th Cir. 2011). We agree with the district court that none of the exceptions applies here.

Two of the exceptions are quickly dismissed. First, *Cash Biz* is not an intervening change in controlling law. Whether PLS substantially invoked the judicial process is a question of federal substantive law. *See Miller Brewing*, 781 F.2d at 497 n.4 ("dismiss[ing] out of hand" the argument that it was a question of state contract law). The fact that the Texas Supreme Court disagreed with this court on a question of federal law cannot change the law of the case.

Second, PLS cannot show that *Vine I* was clearly erroneous or that relying on it would cause manifest injustice. For us to ignore the law of the case under this exception, the prior decision must be "dead wrong." *Hopwood v. Texas*, 236 F.3d 256, 273 (5th Cir. 2000). Multiple courts have now issued thoughtful—though divergent—opinions on whether filing worthless-check affidavits waives arbitration. Even if *Vine I* was wrong, "the question is close."

*Vine I*, 689 F. App'x at 807 (Higginson, J., dissenting). *Vine I* was not dead wrong.[3]

Only the new-evidence exception requires a closer look. At the time *Vine I* was decided, the parties had yet to conduct discovery. Accordingly, the court accepted the Borrowers' well-pleaded facts as true, *Vine I*, 698 F. App'x at 802, including the allegation that PLS "file[d] criminal charges against borrowers." Discovery later revealed that, though the DA had threatened to have the Borrowers arrested and prosecuted, the Borrowers ultimately avoided prosecution by paying the DA's office the amounts of their bounced checks plus fees. PLS argues that the absence of criminal charges of prosecution undermines *Vine I*'s holdings that PLS substantially invoked the judicial process and that the Borrowers suffered any prejudice. We disagree with PLS on both counts.

*Vine I* held that PLS substantially invoked the judicial process by "submitting false worthless[-]check affidavits" to the DA's office, thereby "initiat[ing] a process that invite[d] [the DA] to address issues that [were] at stake in the instant action." *Vine I*, 689 F. App'x at 806. Nothing in this holding depended on whether the DA actually prosecuted the Borrowers. Per *Vine I*, PLS's "invocation" was complete as soon as PLS *tried* to use the criminal-justice system rather than arbitration to collect from the Borrowers.

On the prejudice prong, *Vine I* held that the borrowers showed sufficient prejudice because they "*would have* borne the costs of defending against any theft by check prosecution," and "*would have* suffered the preclusive effect of a conviction in any subsequent litigation." *Id.* at 807 (emphasis added). This

---

[3] Were this panel writing on a blank slate, we might have agreed with the Texas Supreme Court that submitting affidavits to the DA's office is not sufficient invocation of the judicial process to waive arbitration. In fact, the Texas Supreme Court cited the dissenting opinion from *Vine I* that a member of this panel wrote. *See Cash Biz*, 551 S.W.3d at 118–19. But we too are constrained by the law of the case.

hypothetical language suggests that the ultimate lack of prosecution does not undermine *Vine I*'s holding. In any event, PLS was successful in using the criminal-justice system to get exactly what it wanted from the Borrowers—repayment of the loans—and additional fees to boot. These out-of-pocket expenses are independently sufficient to constitute "prejudice."

PLS asserts that the Borrowers suffered no prejudice because PLS later refunded them an amount greater than the fees they paid to the DA. Assuming this is true (something Vine and Pond dispute), PLS sent the checks years after causing the prejudice, and only after the Borrowers had filed suit. PLS has provided no argument or authority that supports it having the ability to "buy back" its right to arbitrate years after invoking the judicial process to the Borrowers' detriment. Thus, even if there is a factual dispute about the existence or amount of the refunds, this ultimately goes to the Borrowers' damages claims, not to PLS's waiver of arbitration.

**IV**

We next address the district court's class-certification order. "We review a district court's certification of a class for abuse of discretion, but if the court's error is a matter of law, the court necessarily abuses its discretion." *Torres v. S.G.E. Mgmt., L.L.C.*, 838 F.3d 629, 635 (5th Cir. 2016) (en banc). We review questions of law de novo. *Regents of Univ. of Cal. v. Credit Suisse First Bos. (USA), Inc.*, 482 F.3d 372, 380 (5th Cir. 2007).

PLS argues that the district court abused its discretion in certifying this case as a class action because (1) the Borrowers signed a waiver of their right to participate in a class action, and (2) the class does not meet the requirements of Rule 23(b)(3) of the Federal Rules of Civil Procedure. We conclude that the district court did not abuse its discretion in either respect.

**A**

PLS argues that the Borrowers' loan agreements waived their right to participate in a class action. The relevant language appears in section 2(c) of the loan agreement's "Waiver of Jury Trial and Arbitration Provision":

> 2. You acknowledge and agree that by entering into this Arbitration Provision:
>
> (a) YOU ARE GIVING UP YOUR RIGHT TO HAVE A TRIAL BY JURY TO RESOLVE ANY DISPUTE ALLEGED AGAINST US . . . ;
>
> (b) YOU ARE GIVING UP YOUR RIGHT TO HAVE A COURT, OTHER THAN A SMALL CLAIMS TRIBUNAL, RESOLVE ANY DISPUTE ALLEGED AGAINST US . . . ;
>
> (c) YOU ARE GIVING UP YOUR RIGHT TO SERVE AS A REPRESENTATIVE, AS A PRIVATE ATTORNEY GENERAL, OR IN ANY OTHER REPRESENTATIVE CAPACITY, OR TO PARTICIPATE AS A MEMBER OF A CLASS OF CLAIMANTS, IN ANY LAWSUIT FILED AGAINST US . . . . YOUR DISPUTE MAY NOT BE CONSOLIDATED WITH THE DISPUTE OF ANY OTHER PERSON(S) FOR ANY PURPOSE(S).

We agree with the district court that "the most plausible way to interpret a class action waiver in the middle of an arbitration provision is as part of the explanation of the rules, rights, and procedures that apply if a dispute is arbitrated—'*not* as an independently effective waiver of the right to pursue a class action outside the arbitration context,'" (quoting *Meyer v. Kalanick*, 185 F. Supp. 3d 448, 454 (S.D.N.Y. 2016). The Borrowers gave up their right to participate in a class action *by virtue of* their agreement to resolve disputes exclusively through individual arbitration. But once PLS waived the arbitration provision, the Borrowers were free to select another form of dispute resolution, including a class action.

The loan agreement's jury-trial waiver provision confirms our conclusion. The right to a jury trial, like a class action, is included as one of the

rights given up as a result of agreeing to arbitrate. But the loan agreement includes an *additional* jury-trial waiver outside the arbitration provision to show that the parties waived their right to a jury trial, full stop—not just as a consequence of agreeing to arbitrate. PLS chose to treat the class-action waiver differently when it drafted the form contract. *See Gonzalez v. Mission Am. Ins. Co.*, 795 S.W.2d 734, 737 (Tex. 1990) ("It is well-established law that where an ambiguity exists in a contract, the contract language will be construed strictly against the party who drafted it since the drafter is responsible for the language used."). Thus, once PLS waived the arbitration provision, the Borrowers were free to proceed as part of a class action.

## B

Finally, we address the district court's findings that this case meets the requirements for class certification under Rule 23 of the Federal Rules of Civil Procedure. Our review of these findings is deferential. *Torres*, 838 F.3d at 635. "Implicit in this deferential standard is a recognition of the essentially factual basis of the certification inquiry and of the district court's inherent power to manage and control pending litigation." *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 408 (5th Cir. 1998).

We need not spend much time discussing the district court's findings on numerosity, commonality, typicality, or adequacy of representation. *See* FED. R. CIV. P. 23(a)(1)–(4). We affirm these findings for essentially the same reasons that the district court articulated.

The parties' principal dispute about Rule 23 is whether the district court abused its discretion in finding "that the questions of law or fact common to class members predominate over any questions affecting only individual members." FED. R. CIV. P. 23(b)(3). PLS argues that individualized questions predominate because the case will require individualized proof of each class

member's (1) damages and (2) actual and justifiable reliance on PLS's misrepresentations.

The district court did not abuse its discretion in concluding that individualized proof of damages would not predominate over common questions. Its finding that the requests for actual economic damages are "fairly uniform" is supported by the evidence. The "merchant fee" and DA "service fee" are set by statute. And the DA's office provided a table from its database showing the amount it collected from each class member. Even if damages required separate litigation, that would not preclude class certification on the central, common questions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016).[4]

Nor did the court abuse its discretion in finding that proof of the Borrowers' reliance on PLS's misrepresentation would not defeat predominance. Generally, "[f]raud actions that require proof of individual reliance cannot be certified as [Rule 23(b)(3)] class actions because individual, rather than common, issues will predominate." *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir. 2003). But this rule has an exception. As the en banc court in *Torres* explained, common issues can still predominate if common evidence of fraudulent misrepresentation "gives rise to a reasonable inference that that misrepresentation induced [the class members' actions] and caused their losses." 838 F.3d at 641. Other circuits have likewise "permitted inferences of reliance when [they] follow[ ] logically from the nature of the scheme, and there is common, circumstantial evidence that class members relied on the fraud." *Id.*

---

[4] The Borrowers have expressly disclaimed any request for damages from reputational harm, such as reduced credit scores. Thus, we do not decide whether a request for such damages would preclude class certification.

No. 19-40353

Here, the district court rejected two of the Borrowers' fraud theories because they fell within the general rule. But it found that the third fraud theory—that PLS filed affidavits with the DA's office fraudulently representing that the Borrowers had committed theft by check—could rely on common evidence and reasonable inferences to prove reliance. This was not an abuse of discretion under *Torres*. The record contains enough evidence for a jury to find that PLS knew that post-dated checks offered as security for a loan could not be referred to the DA's office for collection or prosecution as theft-by-check cases. Yet PLS filed affidavits representing to the DA's office that the Borrowers' bounced checks were not post-dated. In other words, PLS represented to the DA that the Borrowers' checks were the type that could be collected by the DA on threat of arrest and prosecution. A jury could find that PLS did so hoping that the DA, relying on PLS's assertion, would threaten prosecution and that the Borrowers, fearing prosecution, would then repay the loans. Under these circumstances, a jury may reasonably infer that the Borrowers would not have paid the DA's office had they not believed that their bounced checks could actually constitute theft by check—the very misrepresentation PLS made in its affidavits and that the DA's threat of prosecution conveyed to the borrowers. *See Torres*, 838 F.3d at 643.

This case is much like *In re U.S. Foodservice Inc. Pricing Litigation*, which the *Torres* majority relied on. *See* 729 F.3d 108 (2d Cir. 2013). There, the Second Circuit explained that, "[i]n cases involving fraudulent overbilling, payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed." *Id.* at 120. Just as it may reasonably be inferred that someone who paid a bill did so because they believed what the bill told them, a jury may infer that the

13

Borrowers believed what the DA's letter told them, which was in turn based on what PLS's affidavits told the DA. Under these circumstances, the district court did not abuse its discretion in concluding that class-wide issues will predominate over individual ones.

AFFIRMED.