NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAJUN SERVICES UNLIMITED, LLC, DBA SPOKED MANUFACTURING, T2 TOOLS & DESIGN, LLC, SHANE TRICHE, HEATH TRICHE,**
*Plaintiffs-Appellees*

**v.**

**BENTON ENERGY SERVICE COMPANY, DBA BESCO TUBULAR,**
*Defendant-Appellant*

---

2020-1367

---

Appeal from the United States District Court for the Eastern District of Louisiana in Nos. 2:17-cv-00491-BWA-JCW, 2:18-cv-05630-BWA-JCW, 2:18-cv-05932-BWA-JCW, Judge Barry W. Ashe.

---

Decided:  March 12, 2021

---

WALTER JAMES SCOTT, JR., Scott Law Group LLP, Evergreen, CO, argued for plaintiffs-appellees.  Also represented by GEORGE THEODORE SCOTT; TORI SHERER BOWLING, Keogh, Cox & Wilson, Ltd., Baton Rouge, LA.

ROBERT MICHAEL KALLAM, Kean Miller LLP, Lafayette,

LA, argued for defendant-appellant. Also represented by AMANDA MARIE COLLURA-DAY, ROBERT DEVIN RICCI, New Orleans, LA; LAUREN J. RUCINSKI, Baton Rouge, LA; CHRISTOPHER RIVIERE, Riviere Abel, PLC, Thibodaux, LA.

————————————

Before LOURIE, HUGHES, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Benton Energy Service Company (BESCO) appeals the United States District Court for the Eastern District of Louisiana's denial of its motion to compel arbitration. Because the district court did not err in concluding that BESCO waived its right to compel arbitration of the claims at issue, we affirm.

## BACKGROUND

### I

This case arose from a dispute between BESCO and Cajun Services Unlimited, LLC, dba Spoked Manufacturing, T2 Tools & Design, L.L.C., Shane Triche, and Heath Triche (collectively, "Cajun") over ownership and intellectual property rights in an elevator roller insert system used in oil drilling. BESCO and Cajun had a working relationship in which Cajun prepared drawings and fabricated certain equipment for BESCO's use in oil fields. Following a 2014 discussion of improvements to the elevator BESCO used in the field, Cajun began manufacturing a roller insert system to fit BESCO's elevator.

Whenever BESCO's field hands picked up the elevator roller insert system from Cajun's facilities for use in the field, Cajun required them to sign a delivery ticket acknowledging receipt. Around June 2015, Cajun started printing terms and conditions on the delivery tickets. Thereafter, BESCO's field hands continued to pick up the elevator roller insert system and sign the delivery tickets.

Among the terms and conditions on the tickets was an arbitration clause in Section 5.6:

> Any dispute or difference arising out of or in connection with this contract shall be determined by the appointment of a single arbitrator to be agreed between the parties, or failing agreement within fourteen days, after either party has given to the other a written request to concur in the appointment of an arbitrator, by an arbitrator to be appointed by the President or a Vice President of the Chartered Institute of Arbitrators.

J.A. 420. The terms and conditions (also referred to as the "Rental Agreement") stated that the elevator roller insert system "at all times remain[ed] the property of [Cajun]" and prohibited BESCO from making any alteration or modification to the elevator roller insert system, or "dissassembl[ing], reverse engineer[ing] or analyz[ing]" the elevator roller insert system or having a third party do the same. *Id.* The terms and conditions also purportedly gave Cajun "all right, title and interest to all improvements and modifications made to the [elevator roller insert system], whether made by [Cajun] or [BESCO]." *Id.*

In March 2015, Cajun filed a provisional patent application covering the elevator roller insert system, which ultimately issued as U.S. Patent No. 9,988,862 on June 5, 2018. The '862 patent is titled "Elevator Roller Insert System," and names Cajun's principals as the sole inventors and Cajun as the sole assignee.

The parties' relationship deteriorated toward the end of 2015, when oil prices declined, and Cajun demanded more money for the elevator roller insert system than BESCO was willing to pay. BESCO stopped renting the elevator roller insert system from Cajun and contracted with a third party to manufacture new roller inserts for BESCO's elevators.

## II

### A

On January 20, 2017, Cajun filed suit against BESCO in the Eastern District of Louisiana, alleging eight causes of action: (1) violation of the Defend Trade Secrets Act (DTSA); (2) violation of the Louisiana Uniform Trade Secrets Act (LUTSA); (3) violation of Louisiana Unfair Trade Practices and Consumer Protection Law (LUPTA); (4) bad faith breach of contract; (5) fraud; (6) civil conspiracy; (7) declaratory judgment that Cajun retained all right, title, and interest to the elevator roller insert system; and (8) injunctive relief to preclude BESCO from using the elevator roller insert system.  Complaint at 14–27, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-cv-00491 (E.D. La. Jan. 20, 2017), ECF No. 1 (*Cajun I*).  BESCO filed an answer that did not mention arbitration and included counterclaims for: (1) unfair and deceptive trade practices; (2) breach of contract; (3) fraudulent inducement; and (4) declaratory judgment that BESCO did not utilize any of Cajun's confidential and proprietary information.  Answer at 17–20, *Cajun I*, No. 17-cv-00491 (E.D. La. Feb. 16, 2017).  Cajun filed a first amended complaint, and BESCO filed an answer, which again omitted any reference to arbitration.

Discovery proceeded in *Cajun I* on all claims and the parties filed motions for summary judgment in October 2017.  BESCO filed a motion for partial summary judgment seeking dismissal of Cajun's DTSA, LUTSA, and LUPTA claims, arguing that Cajun had no cognizable trade secrets and no standing to assert trade secrets, and, in the alternative, that BESCO had not misappropriated any trade secrets that may have existed.  BESCO's summary-judgment briefing did not mention arbitration.  Cajun filed two motions for summary judgment, one concerning the breach-of-contract claims and counterclaims and the other

concerning BESCO's counterclaims for unfair and deceptive trade practices and fraudulent inducement.

BESCO filed separate oppositions to each of Cajun's motions for summary judgment on October 24, 2017, about six weeks before trial was scheduled to begin. BESCO's opposition to Cajun's trade-practices motion did not mention arbitration. BESCO raised arbitration for the first time in its opposition to Cajun's breach-of-contract motion. In a footnote, BESCO made a single-sentence, alternative argument that the claims should be arbitrated: "Even if this Court determined that the Disputed [Terms & Conditions] constituted a binding agreement between [Cajun] and Besco, the Court should nonetheless deny the motion for summary judgment so that this matter can proceed in arbitration in accordance with the provisions of the Disputed [Terms & Conditions]." J.A. 216. BESCO reiterated this alternative argument in its reply brief in support of its own motion for summary judgment. J.A. 237 ("[E]ven if the alleged terms and conditions do constitute a binding agreement between Cajun and Besco, which is at all times denied, this Honorable Court should dismiss this action so that the dispute can proceed to arbitration in accordance with the provisions of Cajun's own 'agreement.'").

*Cajun I* ended on May 18, 2018 when, "at the request of counsel for both parties," the district court administratively closed the case "pending request by either party to re-open the case in the future with the parties reserving all rights." J.A. 259–60. Due to standing issues with Cajun's DTSA claim, the district court dismissed that claim without prejudice. The DTSA claim was the lynchpin of the district court's jurisdiction, but the district court retained supplemental jurisdiction of Cajun's state law claims in "anticipat[ion of Cajun] moving to amend its complaint once this case is re-opened in order to add its anticipated patent infringement claim." J.A. 259.

On June 4, 2018, the day before the '862 patent issued, BESCO filed a declaratory judgment action seeking declarations that the '862 patent claims were invalid, not infringed, and unenforceable. Complaint at 6–7, *Benton Energy Serv. Co. v. Cajun Servs. Unlimited, LLC*, No. 18-cv-05630 (E.D. La. June 4, 2018) (*BESCO*).

On June 14, 2018, Cajun filed another suit against BESCO, asserting the same causes of action as in the *Cajun I* litigation, except that Cajun added a patent infringement claim and removed its civil conspiracy claim. Complaint at 26–39, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 18-cv-05932 (E.D. La. June 14, 2018), ECF No. 1 (*Cajun II*). BESCO answered the *Cajun II* complaint on August 13, 2018, raising arbitration as an affirmative defense to Cajun's breach-of-contract claims. Answer at 18, *Cajun II*, No. 18-cv-05932 (E.D. La. Aug. 13, 2018), ECF No. 20 ("Any alleged breach of contract claims based on the language and provisions of the Rental Agreement are subject to arbitration."). BESCO also asserted counterclaims for noninfringement, invalidity, and unenforceability of Cajun's patent, unfair and deceptive trade practices, fraudulent inducement, breach of contract, and the lack of a valid agreement.

On August 15, 2018, the district court entered an order consolidating *BESCO* and *Cajun II* with *Cajun I*.[1] J.A. 331–32. Cajun filed an amended complaint in the consolidated action in November 2018. BESCO filed an answer to Cajun's amended complaint, including arbitration as an affirmative defense to Cajun's breach-of-contract claims. J.A. 480.

---

[1]    The district court ultimately granted Cajun's motion to dismiss the *BESCO* declaratory judgment claims for lack of subject-matter jurisdiction in April 2019.

In April 2019, BESCO filed three motions for summary judgment: a first seeking dismissal of Cajun's trade-secret claims; a second seeking dismissal of Cajun's breach-of-contract claim; and a third seeking dismissal of Cajun's patent infringement claims. BESCO raised arbitration in its briefing supporting its motion for summary judgment on Cajun's breach-of-contract claims only. Specifically, BESCO included a footnote to the last sentence of its brief, stating:

> In the event Besco's Motion for Partial Summary Judgment is denied and a determination is made . . . that the Terms and Conditions . . . is a binding and enforceable agreement . . . , Besco intends to seek a dismissal and/or stay of any and all breach of contract claims asserted by Cajun so that these claims can be resolved by arbitration pursuant to Section 5.6 of the Terms and Conditions/Disputed [Terms & Conditions].

J.A. 500.

In June 2019, the district court held a pretrial conference. The parties' proposed pretrial order stated several contested issues related to arbitration, including "whether all or any part of this dispute must be submitted to, and decided by, arbitration," to the extent the Rental Agreement was binding; "[w]hich claims of any party, if any, are subject to the . . . arbitration provision"; and "[w]hether Besco has waived the arbitration provision." J.A. 657.

BESCO filed its objections to Cajun's proposed jury instructions in July 2019. Relevant here, BESCO "object[ed] to any jury instruction which would attempt to empower the jury to determine the issues of whether the Agreement was breached, whether the breach caused any actual damage to [Cajun], and/or the calculation of any purported damages resulting from the alleged breach." J.A. 687. The jury could not decide these issues, BESCO maintained, because if "the Agreement is enforceable, then the arbitration

clause included therein will be triggered and the parties' dispute must be resolved by arbitration pursuant to Section 5.6 of the Agreement." *Id.* Notwithstanding BESCO's position that some or all of Cajun's claims would be subject to arbitration if the Rental Agreement were enforceable, BESCO's proposed verdict form asked the jury to determine liability and damages on BESCO's counterclaims if it found the Rental Agreement enforceable. J.A. 1297–303.

The district court held a four-day jury trial starting on July 8, 2019. The jury found in Cajun's favor on all of Cajun's claims remaining in the case and rejected BESCO's counterclaims.

B

After receiving the jury's verdict, BESCO moved to compel arbitration of all of Cajun's claims, asking the district court to "vacate the jury verdict on all issues other than the finding of a valid and enforceable written agreement between Cajun and Besco." *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 17-cv-491, 2019 WL 6173766, at *2 (E.D. La. Nov. 11, 2019). BESCO asserted that all claims should be arbitrated because they "arise out of the equipment rentals under the Rental Agreement." *Id.* Cajun responded that BESCO waived any right to compel arbitration by failing to timely raise the issue. The district court denied BESCO's motion to compel arbitration, concluding that BESCO had waived arbitration of all of its claims by "substantially invok[ing] the judicial process to [Cajun's] prejudice." *Id.* at *10.

In particular, the district court found that BESCO had substantially invoked the judicial process with respect to all of the claims at issue. Regarding BESCO's non-contract claims, the district court found that BESCO "sought a resolution of [Cajun's] trade-secret, unfair-trade-practices, fraud, and patent-infringement claims, as well as its own claims against [Cajun], through the judicial system, without arguing that any of these claims should be resolved

through arbitration until" after trial. *Id.* at *6. Addressing BESCO's contract claims, the district court acknowledged that "[a]fter October 2017, Besco did consistently mention its arbitral rights in regard to the contract claims as it continued to dispute the existence of the Rental Agreement and litigate the other claims." *Id.* at *8. But, considering the balance of BESCO's conduct, the district court decided that this did not alter the conclusion that "Besco's actions before mentioning its arbitral rights constitute[d] overt acts which evince a desire to resolve the dispute through litigation rather than arbitration." *Id.* at *9. Specifically, "during the seven months preceding any notice of an intent to arbitrate, Besco filed two answers with affirmative defenses and counterclaims, filed a joint motion for a protective order (without seeking to limit discovery to the issue of contract validity), engaged in full-fledged discovery, and filed a motion for summary judgment on Cajun's trade-secret claims." *Id.*

The district court further found that Cajun was prejudiced as a result of BESCO's delay in seeking arbitration. The court emphasized that Cajun was forced to incur legal expenses defending against BESCO's counterclaims and BESCO's discovery in the *Cajun I* lawsuit on claims that BESCO now argues are subject to arbitration. *See id.* at *6, *9. The court reasoned that Cajun's expenses in litigating both BESCO's motions for summary judgment and the *BESCO* declaratory judgment action provided an additional basis for prejudice, because BESCO did not notify Cajun of any intent to "seek arbitration of any non-contract claim until the final pretrial conference on June 25, 2019, over two years after the initial complaint was filed." *Id.* at *6. The district court further found that BESCO's October 2017 assertions that the contract claims should be arbitrated did not eliminate prejudice to Cajun as to those claims, because BESCO's "total inaction on its intent to seek arbitration, while otherwise continuing to litigate, made it unreasonable for Besco to expect [Cajun] to believe

Besco actually intended to move for arbitration." *Id.* at *10. BESCO appeals.[2]

## DISCUSSION

On appeal, BESCO challenges the district court's denial of its motion to compel arbitration. Specifically, BESCO argues that the district court committed clear error in finding that BESCO substantially invoked the litigation process and that BESCO's conduct in this case prejudiced Cajun. Because the district court's conclusions are not clearly erroneous, we affirm.

I

As a threshold matter, we conclude that we have jurisdiction over BESCO's appeal. The district court had jurisdiction under 28 U.S.C. § 1338 due to Cajun's assertion of a patent infringement claim. The Federal Arbitration Act allows an appeal from "an order . . . denying a petition . . . to order arbitration to proceed," 9 U.S.C. § 16(a)(1)(B), thus "render[ing] appealable under section 1292(a)(1) the denial

---

[2]    Following oral argument, Cajun informed us that it had filed a petition for involuntary bankruptcy against debtor BESCO, and we stayed BESCO's appeal in this court consistent with 11 U.S.C. § 362(a)(1), which imposes an automatic stay on judicial proceedings against a debtor when a petition for involuntary bankruptcy is filed. Order Staying Appeal, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 20-1367 (Oct. 26, 2020), ECF No. 48. The parties later informed us that the United States Bankruptcy Court for the Eastern District of Louisiana modified the automatic stay for the limited purpose of allowing the appeal in this court to proceed to final judgment. Notice Regarding Bankruptcy at 2, *Cajun Servs. Unlimited, LLC v. Benton Energy Serv. Co.*, No. 20-1367 (Dec. 18, 2020), ECF No. 49. We hereby lift the stay of this appeal in this court.

of an injunctive order (*i.e.*, motions to compel arbitration)." *Microchip Tech. Inc. v. U.S. Philips Corp.*, 367 F.3d 1350, 1355 (Fed. Cir. 2004). "Since the district court had jurisdiction under 28 U.S.C. § 1338, and the order is appealable under section 1292(a)(1), we, rather than the regional circuit, have appellate jurisdiction." *Id.* (citing 28 U.S.C. § 1292(c)(1)).

## II

We apply Fifth Circuit law to our review of the district court's denial of BESCO's motion to compel arbitration. *See id.* at 1356 ("We are obligated to follow regional circuit law on questions of arbitrability that are not 'intimately involved in the substance of enforcement of a patent right.'" (quoting *Flex-Foot, Inc. v. CRP, Inc.*, 238 F.3d 1362, 1365 (Fed. Cir. 2001))). The Fifth Circuit reviews the denial of a motion to compel arbitration de novo and reviews any underlying factual findings for clear error. *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010). "The district court's factual findings are clearly erroneous only if, after reviewing the record, we are firmly convinced that a mistake has been made." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 907 (5th Cir. 2009) (citing *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998)).

Under Fifth Circuit law, waiver of a party's right to arbitrate "will be found when the party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 344 (5th Cir. 2004) (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 326 (5th Cir. 1999)). "There is a strong presumption against finding a waiver of arbitration, and the party claiming that the right to arbitrate has been waived bears a heavy burden." *Id.* (citing *Subway*, 169 F.3d at 326).

A

"To invoke the judicial process '[t]he party must, at the very least, engage in some overt act in court that evinces a desire to resolve the arbitrable dispute through litigation rather than arbitration.'" *Id.* (alteration in original) (quoting *Subway*, 169 F.3d at 329). A district court's finding that a party substantially invoked the judicial process is reviewed for clear error. *Id.* at 346 ("[T]he district court finding that Republic invoked the judicial process . . . is not clearly erroneous.").

The district court did not clearly err in finding that BESCO substantially invoked the judicial process with respect to both the contract and non-contract claims.[3] BESCO filed two answers in *Cajun I* and participated in full-fledged discovery on the merits of the contract claims before it first hinted that it would seek to arbitrate those claims in October 2017. Even then, BESCO did not seek to stay proceedings on the merits pending resolution of the threshold question of the validity of the agreement containing the arbitration provision. Instead, BESCO stated only

---

[3]    On appeal, BESCO asserts that the district court erred in treating the contract and non-contract claims separately. BESCO does not appear to dispute, however, that invocation of the judicial process is determined on a claim-by-claim basis. *See Subway*, 169 F.3d at 328 ("We hold today that a party only invokes the judicial process to the extent it litigates a specific claim it subsequently seeks to arbitrate."). Nor does BESCO appear to challenge the district court's factual finding that BESCO "acted differently" with respect to how it sought to litigate the contract and non-contract claims. *Cajun*, 2019 WL 6173766, at *4; *see* Appellant's Br. 37–39. Accordingly, we conclude that BESCO has not demonstrated that the district court erred by analyzing the contract and non-contract claims separately.

that the district court should deny Cajun's motion for summary judgment on the merits if the court found a valid agreement "so that this matter can proceed in arbitration." J.A. 216. Other than including this obscure statement in a footnote, BESCO did not take any action to initiate an arbitration in accordance with the terms of the Rental Agreement until nearly two years later, following a trial on the merits.

As the district court properly found, BESCO participated in litigation even more fully with respect to the non-contract claims. BESCO waited until the June 2019 pretrial conference in the consolidated action to "put[ Cajun] on notice that it would even **_possibly_** seek arbitration of any non-contract claim." *Cajun*, 2019 WL 6173766, at *6. In addition to its litigation activity in *Cajun I*,[4] BESCO filed two answers, asserted counterclaims, and filed three motions for summary judgment before it ever suggested that the non-contract claims were subject to arbitration at the June 2019 pretrial conference. Even then, BESCO's actions were inconsistent with the notion that the non-contract claims must be arbitrated. Indeed, BESCO's proposed verdict form asked the jury to determine liability and damages on BESCO's counterclaims. We agree with the district court that these facts collectively demonstrate BESCO's "desire to resolve the arbitrable dispute through litigation rather than arbitration." *Republic Ins.*, 383 F.3d at 344 (quoting *Subway*, 169 F.3d at 329).

The district court's decision is also consistent with the Fifth Circuit's decisions in *Republic Insurance* and *General*

---

[4]    BESCO argues that we should disregard its actions in *Cajun I* in considering whether BESCO waived its right to compel arbitration in the consolidated action. Appellant's Reply 6; *see* Appellant's Br. 26, 29. We disagree and conclude that the consolidated action is properly viewed as a continuation of *Cajun I*.

14    CAJUN SERVS. UNLIMITED, LLC v. BENTON ENERGY SERV. CO.

*Guaranty Insurance Co. v. New Orleans General Agency, Inc.*, 427 F.2d 924 (5th Cir. 1970). In *Republic Insurance*, the Fifth Circuit affirmed the district court's denial of Republic's motion to compel arbitration. 383 F.3d at 349. The court reasoned that Republic had waived its right to arbitrate because it "wait[ed] to file its motion to compel arbitration until days before the trial," and it "undertook extensive litigation activities before asserting its right to arbitrate," such as answering counterclaims, conducting full-fledged discovery, amending its complaint, filing several motions, and filing the required pretrial materials with the district court. *Id.* at 344–45. On its contract claims, BESCO, like Republic, filed two answers and participated in full-fledged discovery on the merits of the contract claims before hinting that it would seek to arbitrate those claims. With respect to the non-contract claims, BESCO further filed an additional suit, two answers, and four motions for summary judgment before raising arbitration. Like Republic, BESCO's failure to move to compel arbitration in a timely fashion "prevented the district court from limiting the judicial proceedings to the threshold question of whether a valid agreement to arbitrate exists." *Id.* at 345.

On the other hand, in *General Guaranty*, the Fifth Circuit reversed the district court's denial of the defendant's motion to compel arbitration when the defendant's first responsive pleading contained an alternative argument requesting a stay pending arbitration, and the district court's denial was based on: (1) the defendant's failure to "ask for arbitration before suit was filed"; (2) the defendant "allow[ing] plaintiff to proceed with taking depositions . . . before indicating any intent to request arbitration"; and (3) the defendant "ask[ing] the court . . . for a stay to arbitrate only in the alternative." 427 F.2d at 926–28. Unlike the defendant in *General Guaranty*, BESCO did not raise its right to arbitration in its first responsive pleading. Nor did BESCO raise its right to arbitration in a manner

"consistent with orderly participation in the lawsuit," that would provide for "preservation of the time and effort of [the] court and [the] parties." *Id.* at 929.  The holding in *General Guaranty* that the defendant "did not lose its rights to arbitration by pleading alternatively that the contract had been abandoned and that court proceedings should be stayed pending arbitration," *id.* at 928, also undermines BESCO's assertion that it could not raise the issue of arbitrability of the claims until after the jury had decided whether the parties had a valid agreement, *see* Appellant's Br. 25–26, 34.

For all these reasons, we conclude that the district court did not clearly err in finding that BESCO substantially invoked the litigation process.

B

"[F]or purposes of a waiver of an arbitration agreement: 'prejudice . . . refers to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'" *Republic Ins.*, 383 F.3d at 346 (alterations in original) (quoting *Subway*, 169 F.3d at 327).  A finding of prejudice in support of the conclusion that a party has waived its right to compel arbitration is a finding of fact reviewed for clear error.  *Price v. Drexel Burnham Lambert, Inc.*, 791 F.2d 1156, 1163 (5th Cir. 1986).

The district court did not clearly err in finding that Cajun was prejudiced by BESCO's conduct in this case.  The district court acknowledged that, in *Cajun I*, BESCO raised arbitration as an alternative argument in a footnote at the end of its October 2017 summary-judgment opposition brief, and that this may have informed Cajun of BESCO's intent to arbitrate Cajun's contract claims as of that time.  The district court reasonably concluded, however, that notwithstanding this footnote, "Besco's total inaction on its intent to seek arbitration, while otherwise continuing to

litigate, made it unreasonable for Besco to expect [Cajun] to believe Besco actually intended to move for arbitration." *Cajun*, 2019 WL 6173766, at \*10; *see Republic Ins.*, 383 F.3d at 1346 ("[W]here the pretrial activity was related to all of the parties' claims, including those that were conceded to be arbitrable, arbitration would result in prejudice." (citing *Price*, 791 F.2d at 1159)).  Indeed, BESCO allowed litigation and trial to proceed on the merits of all issues instead of seeking to limit the proceedings to the threshold question of whether a valid agreement existed. And even prior to October 2017, Cajun incurred costs for pleadings, discovery, and motions practice in *Cajun I* for claims that BESCO subsequently sought to arbitrate.

We also find unpersuasive BESCO's assertion that Cajun's litigation expenses do not provide a cognizable basis for prejudice.  *See* Appellant's Br. 35–36 (citing *Gen. Guar.*, 427 F.2d at 929).  BESCO's cited cases do not stand for such a broad proposition.  The court in *General Guaranty*, on which BESCO principally relies, stated that "the factors of delay and possible double expense, arising from the court's determination of the initial issue, is not a basis for denying the arbitration otherwise available by reason of that determination."  427 F.2d at 929.  The reference to determination of "the initial issue" in *General Guaranty* refers to whether arbitration was available at all in that case. *See id.* ("Initial determination was to be given the issue of abandonment [of the contract], and the issues of whether the indemnitors were to be bound by an arbitration award and whether arbitration had been waived were reserved."). Contrary to BESCO's suggestion, *General Guaranty* did not hold that expenses incurred in litigation to resolve the merits of claims that a party later argues are subject to arbitration are irrelevant to the prejudice determination.

Accordingly, the district court did not clearly err in concluding that BESCO's conduct prejudiced Cajun.

CONCLUSION

We have considered BESCO's remaining arguments and do not find them persuasive.  For the foregoing reasons, we affirm the district court's denial of BESCO's motion to compel arbitration.

**AFFIRMED**